1 | Christopher A. Villasenor, Esq. (SBN 147118)
**CATALYST LAW GROUP**
2 | **A PROFESSIONAL CORPORATION**
9710 Scranton Road, Suite 170
3 | San Diego, CA 92121
Telephone: (858) 450-0099
Facsimile: (858) 450-9834

FILED

09 AUG 13 AM 10: 38

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

Attorneys for Plaintiff
MOHAMMAD A. ALAEI

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| MOHAMMAD A. ALAEI, an individual, | Case No. **09 CV 1762 DMS BLM** |
|---|---|
| Plaintiff, | |
| vs. | **COMPLAINT FOR DAMAGES, RESCISSION, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF** |
| KINECTA FEDERAL CREDIT UNION fka HUGHES AIRCRAFT EFCU, a California Credit Union; KINECTA ALTERNATIVE FINANCIAL SOLUTIONS, INC., a California corporation; COAST CAPITAL GROUP, INC., a California corporation; JOSH RUPLE, an individual; T.D. SERVICE COMPANY, a California corporation; and DOES 1 to 100, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## JURISDICTION AND VENUE

1.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. section 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. Section 1367 to hear and determine plaintiff's state law claims because those claims are related to plaintiff's federal claims and arise out of a common nucleus of operative facts and form part of the same case or controversy under Article III of the United States Constitution.

2.    The Court has personal jurisdiction over plaintiff's action for declaratory relief Pursuant to 28 U.S.C. section 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. section 2203 and Rule 65 of the Federal Rules of Civil Procedure.

////

-1-



3.     This court has jurisdiction over each of the named defendants because they, and each of them, do business in this judicial district and have used the means and instrumentalities of interstate commerce, including but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets within this judicial district; and therefore they, and each of them, have purposefully availed themselves of the laws of this judicial district.

4.     Venue is proper in the Southern District of California Pursuant to 28 U.S.C. section 1391(b)(2) in that the unlawful conduct that gave rise to these claims occurred within the Southern District of California.

### PARTIES

5.     Plaintiff, MOHAMMAD A. ALAEI (hereinafter "Plaintiff" or "Mr. Alaei") is and was at all relevant times mentioned herein a resident and owner of a single family residence located at 28715 Stonegate Drive, Valley Center, California 92082 (hereinafter "the Subject Property"). Mr. Alaei is 79 years old. Plaintiff is, and at all times was, an elderly man and unable to consummate real estate transactions without the assistance of mortgage or real estate professionals. Accordingly, Plaintiff reasonably relied on all Defendant Brokers/Lenders to obtain a home loan that was consummated on or about February 27, 2007 (hereinafter "Subject Loan").

6.     Plaintiff is informed and believes and thereon alleges that Defendant KINECTA FEDERAL CREDIT UNION aka HUGHES AIRCRAFT EFCU (hereinafter "Kinecta") is a California Credit Union doing business in the State of California. Kinecta's business address is 1440 Rosecrans Avenue, Manhattan Beach, CA 90266.

7.     Plaintiff is informed and believes and thereon alleges that Defendant KINECTA ALTERNATIVE FINANCIAL SOLUTIONS, INC. (hereinafter "KAFS") is a California Corporation doing business in the State of California. KAFS' business address is also 1440 Rosecrans Avenue, Manhattan Beach, CA 90266.

8.     Plaintiff is informed and believes and thereon alleges that Defendant COAST CAPITAL GROUP, INC. (hereinafter "CCG") is a California Corporation doing business in the State of California

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

1  Plaintiff is informed and believes that CCG's business address is 1601 Pacific Coast Highway, Suite
2  245, Hermosa Beach, CA 90254.

3       9.     Plaintiff is informed and believes and thereon alleges that JOSH RUPLE (hereinafter
4  "JR") is an individual doing business at 1601 Pacific Coast Highway, Suite 245, Hermosa Beach, CA
5  90254. Plaintiff is further informed and believes and thereon alleges that CCG and JR were the
6  mortgage brokers of record and were employed by Kinecta with respect to the Subject Loan.

7       10.    Plaintiff is informed and believes and thereon alleges that Defendant TD SERVICE
8  COMPANY (hereinafter "TD") is California Corporation doing business in the State of California.
9  Plaintiff is informed and believes and thereon alleges that TD is the duly appointed Trustee with respect
10 to the Foreclosure and Notice of Default of the Subject Property. TD's business address is 1820 East
11 First Street, Suite 210 and/or 300, Santa Ana, CA 92705.

12      11.    The full extent of the facts linking the fictitious named defendants with the foregoing
13 causes of action and/or true names or capacities, whether individual, corporate, partnership, associate,
14 member, or otherwise, of defendants DOES 1 through 100 are unknown to Plaintiff, who therefore sue
15 defendants by such fictitious names. Plaintiff is informed and believe and thereon allege that each of the
16 defendants designated herein as DOE is negligently, wantonly, recklessly, tortiously and unlawfully
17 responsible in some manner for the events and happenings herein referred to and proximately caused
18 injury and damages to Plaintiff as herein alleged. Plaintiff will hereafter seek leave of Court to amend
19 this Complaint to show said Defendants' true names and capacities after the same have been ascertained.

20      12.    Plaintiff alleges on information and belief that each Defendant named herein, including
21 those named as DOES, is, and at all relevant times mentioned was, the agent, servant, co-conspirator,
22 employee partner, principal, joint-venture, successor-in-interest and/or alter ego of each of the other
23 Defendants and, in doing the things alleged herein, was acting within the course and scope and with the
24 knowledge and/or permission of each of the other named Defendants. Plaintiff further alleges on
25 information and belief that each Defendant named herein aided and abetted the others by authorizing
26 and/or ratifying the acts herein alleged.

27 ////

28

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

13.    It is herein alleged that the defendants **Kinecta, KAFS, CCG and JR,** (hereinafter "The Broker and Lender Defendants") preyed upon Mr. Alaei, a 79 year old elderly man, who was inexperienced in the mortgage industry,  through predatory and abusive lending practices. On or about February 27, 2007, with interest rates still near historical lows, The Broker and Lender Defendants promised Plaintiff that he would qualify for a Thirty (30) Year Conventional **Fixed** Interest Rate Loan at **6.125%** annual interest for **360** months and that the monthly **principal and interest** payments would be **$3,387.89**.

14.    At closing, The Broker and Lender Defendants provided Plaintiff with loan documents to sign which: a) stated Plaintiff's base employment monthly income as **$25,000.00,** b) charged Plaintiff with **7.141%** actual annual percentage rate mortgage that was an Adjustable Rate Mortgage (hereinafter "ARM") **interest only** loan for **seven (7) years,** and (c) attached alleged fraudulent "creative financing" tools to the Deed of Trust such as the "Adjustable Rate Note" and an "Adjustable Rate Rider." Further and even more egregious, Defendants charged Plaintiff closing costs of **$21,376.97.** [Pg. 4-5 of Exhibit "A"]. The Broker and Lender Defendants' predatory conduct was further demonstrated by the fact that they promised and contracted with Plaintiff a credit for closing costs at closing called "Borrower's closing costs paid by Seller" [Pg. 3 of Exhibit "B"] in the amount of **$6,637.00** that was never credited at closing but instead was paid to the Broker for a Yield Spread Premium (hereinafter "YSP") to CCG. [Pg. 2 of Exhibit "A"].

15.    There is no uniformly accepted definition of "predatory lending." However, the United States Department of Housing and Urban Development ("HUD") has defined predatory lending as lending "involving deception or fraud, manipulation of borrowers through aggressive sales tactics, or taking unfair advantage of a borrower's lack of understanding about loan terms." *Curbing Predatory Home Mortgage Lending* (June 2000), a joint report of the Department of Housing and Urban Development and the Treasury Task Force on Predatory Lending ("HUD report") at 1. According to HUD, "[t]hese practices are often combined with loan terms that, alone or in combination, are abusive or make the borrower more vulnerable to abusive practices." *Id.*

-4-

16.     HUD and the United States General Accounting Office ("GAO") have also identified various lending practices as predatory. Since predatory lenders are constantly developing new techniques to take advantage of borrowers, any enumeration of predatory practices necessarily will be incomplete. Nevertheless, it is generally accepted by the lending industry and government agencies who monitor that industry that predatory lending practices include: (a) engaging in aggressive, high-pressure and/or **misleading sales tactics**; (b) lending without regard to the borrower's ability to repay; (c) imposing excessive **prepayment penalties** that trap borrowers into predatory loans; (d) making **misrepresentations** or to otherwise misleading borrowers about loan terms; (e) **falsifying loan documents**; (f) targeting low-income, **elderly and minority borrowers** for predatory lending campaigns; (g) **charging excessive fees**, points and interest rates unrelated-to the borrower's credit/risk profile; (h) misleading borrowers about the borrower's credit/risk profile to steer borrowers to a higher-cost loan that is not justified by the borrower's true profile; and (i) **causing borrowers to refinance loans multiple times over a short period of time without any economic gain to the borrowers.** HUD Report at 2; *Federal and State Agencies Face Challenges in Combating Predatory Lending* (January 2004), a report by the United States General Accounting Office ("GAO") Report at 3-4, 18-19. These and similar practices, individually and collectively, are referred to herein as "predatory lending" practices. Defendants engaged in most of the above practices with respect to Plaintiff as set-forth herein below.

17.     Predatory lenders use prepayment penalties as a means to trap borrowers into loans with onerous terms. GAO Report at 19. Borrowers cannot refinance and escape those onerous terms without incurring thousands of dollars in new fees or paving prepayment penalties, further stripping the equity from their homes. Defendants engaged in this practice with respect to Plaintiff as set-forth herein below. Predatory lenders frequently deceive borrowers and engage in outright fraud through practices such as falsifying loan applications. GAO Report at 19. Predatory lenders prey on the financially unsophisticated and/or lack access to mainstream financial outlets. HUD Report at 22; GAO report at 25. Defendants engaged in this practice with respect to Mr. Alaei as set-forth herein below.

////

-5-

18.     Subprime lenders, like the Brokers and Lender Defendants named herein,   generally charge *somewhat* higher interest rates to account for their perceived *"credit risk"* associated with these loans. There is no great capital risk to subprime lending because lenders have their money secured by the real estate, and in general do not lend above 70% of the appraised value to ensure repayment of the principal of the loan as well as coverage for any foreclosure cost. If lenders do lend at a higher loan to value figure, the lenders can always demand mortgage insurance from the borrower.

19.     However, unscrupulous lenders/brokers have up-played the "credit risk" argument in the subprime market to justify engaging in predatory lending which is nothing less than an attempt to steal as much money as possible from the equity in a borrower's home, and this includes designing a transaction which will intentionally lead to a foreclosure on the borrower's home. These lenders/brokers are called predatory because they prey on financially naïve and inexperienced borrowers who are cash poor but equity rich. As set-forth below, the Broker and Lender Defendants in this complaint would definitely fall into the category of predatory lenders.

20.     A predatory mortgage broker acts as the agent of the lender and abandons their fiduciary duty to the buyer. The predatory mortgage broker "preys" on the borrower to take as much money in fees, costs, commissions as possible from the equity in the borrower's home. Predatory lenders engage in the same conduct and/or adopt a closed eye posture to the predatory mortgage broker's forged applicants' data on loan applications.

21.     Mr. Alaei alleges that the Broker and Lender Defendants, and each of them, teach their employees/agents to lure borrowers with promises that their loans will have certain terms and conditions, knowing they have no intent of providing such loans, and then use slight of hand paper shuffling tactics, high-pressure sales tactics, or outright fraud to induce borrowers to sign loan contracts with significantly less favorable terms and conditions. Plaintiff further alleges that the Broker and Lender Defendants failed to provide required disclosures, failed to leave a true copy of loan documents in borrowers' possession, unlawfully induced borrowers to enter into mortgages knowing that borrowers will not be able to meet the monthly mortgage payments based on their monthly income or where excessive or unfair fees are levied, that mortgage salespeople and brokers forged applicants' data on loan

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

1  applications, and that the Broker and Lender Defendants insert pre-payment penalties to their predatory

2  loans in order to lock borrower's into the loans and garner further fees, costs and commissions through

3  inevitable refinancing.

4      22.    The Broker and Lender Defendants in this action took part in a *"3 part Deceptive Acts*

5  *and Practices Predatory Loan Scheme"* against Plaintiff as follows:

6      **(1)**    The *Broker and Lender Defendants lured Plaintiff in with the enticement of a Fixed*

7  *Rate Mortgage which they had no intention of fulfilling.*

8      **(a)**    In mid-winter of 2007, Mr. Alaei searched to refinance an existing forty-year negative

9  amortization loan that was consummated in 2005. Plaintiff received an advertisement flyer from the

10  Broker and Lender Defendants and spoke to employing broker JR. Plaintiff explained his current loan

11  and sought to lock in to a **conventional thirty-year fixed interest rate loan** while interest rates were at

12  an all-time low. JR gave strong assurances and promised that he would be able to provide Mr. Alaei with

13  a thirty-year fixed rate loan with little closing costs and even a credit of $6,637.00 at closing.

14      **(b)**    Plaintiff received the Uniform Residential Loan Application (hereinafter "URLA")

15  provided by the Broker and Lender Defendants via fax. [Exhibit "B"]

16      **(c)**    The Broker and Lender Defendants then added loan terms and completed the URLA

17  **after** Plaintiff filled out limited financial and contact information. The Broker and Lender Defendants

18  filled out and erroneously completed Sections I, II, V, VI, VII, VIII, IX (less Plaintiff signature/date)

19  and X of the URLA. Plaintiff filled out and completed Sections III, IV, and IX (signature/date only) of

20  the URLA. Plaintiff never saw the URLA again until signed at closing along with numerous other

21  documents provided to sign. Plaintiff spoke to Mr. Ruple throughout the entire Subject Loan transaction

22  and was assured many times that Mr. Alaei was to receive a thirty-year fixed interest rate loan. The

23  entire initiative/objective for Mr. Alaei refinancing the Subject Loan was to exit out of a forty-year

24  Negative Amortized Loan that was obtained in 2005 and enter into a Thirty-Year Fixed Rate Loan.

25  However, the actual loan terms changed on the day of closing and were never explained when

26  documents were provided for signing via fax and mail. Along with the many other erroneous fraudulent

27  statements made on the URLA, the Broker and Lender Defendants fraudulently and/or negligently

28

placed nonexistent Washington Mutual checking and savings account numbers on the URLA and stated that Mr. Alaei had a combined total of $147,900 in cash in these three fictional accounts. [Exhibit "B"]. Plaintiff then signed and notarized documents through his checking and savings lending institution, faxed a copy of all signed and notarized documents, and then mailed the original documents to Mr. Ruple at CCG.

(d)    The Broker and Lender Defendants further failed to provide Plaintiff with a timely or accurate preliminary Truth In Lending Act (hereinafter "TILA") disclosure statement required by federal law at the time the URLA was completed. Moreover, the final and only TILA disclosure that was eventually provided at closing was sorely misstated and highly inaccurate. The Annual Percentage Rate was 1.016% higher than promised. The Broker and Lender Defendants never explained nor mentioned to Plaintiff that he was getting a loan where he would pay interest only for seven (7) years at $3,387.89 per month and then after sixty (60) months, the next three hundred (300) payments would increase from $3,387.89 to **$5,013.49**, an increase of **$1,625.60** or **47.980%**. [Exhibit "C"]. Additionally, the 300 future payments could increase to a maximum of 11.125000% over the life of the loan. [Exhibit "F"]. The number of payments, the amount of the payments, and the payment change date breakdown were misstated and showed three different payment schedules changing on three different dates.

(e)    Moreover, the TILA disclosure revealed the type of loan as "Adjustable" and the Variable Rate Feature box was checked for "This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier." [Exhibit "C"]. Although, the final and only TILA disclosure was never provided until the day of closing, this checked box statement seems to implicate that the Plaintiff received these variable rate disclosures such as the "Adjustable Rate Note" and "Adjustable Rate Rider" **prior** to signing the TILA disclosure. This statement is misleading and false. Furthermore, The Deed of Trust (hereinafter "Deed") stated in paragraph 26 that an "Adjustable Rate Rider" shall be attached to the Deed but never mentioned that the "Adjustable Rate Note" would be attached to the Deed. [Exhibit "G"]. Therefore, Exhibit G is defective in that it never mentioned the Adjustable Rate Note. The Plaintiff then signed all documents provided at one time without any explanation or supervision during the signing.

- 8 -

1      **(f)**    The Broker and Lender Defendants knowingly and purposely placed the Present Market

2  Value at $885,000.00 in 2007 when the original purchase price was $775,000.00 in 2005. The housing

3  market has been on a downward spiral since 2005 so placing the present market value at $885,000.00 in

4  2007 was highly conjectural and erroneous to the true present market value. The Broker and Lender

5  Defendants purposely or otherwise placed this highly inflated number so that it could engage in yet

6  another predatory lending scheme in an attempt to steal as much money as possible from the equity in a

7  borrower's home. This includes designing a transaction that will intentionally lead to a foreclosure on

8  the borrower's home. Additionally, the Broker and Lender Defendants materially misstated section VII

9  of the URLA called "Details of Transaction" by placing the refinance amount at **$643,867.00**, estimated

10  prepaid items at $838.79, estimated closing costs at **$9,888.00**, and the borrower's closing costs paid by

11  Seller at $6,637.50. The total cost was stated at $654,593.79 with a credit at closing to Mr. Alaei in the

12  amount of $6,637.00. Moreover, this section of the URLA also stated that the amount of cash to

13  Borrower at closing would be $15,793.71. However, the Final HUD-1 statement [Exhibit "A"] stated the

14  refinance amount at **$663,750.00** and the total closing cost at **$21,376.97** with **no** credit at closing as

15  promised in the URLA.

16      **(g)**    The Broker and Lender Defendants also stated on the Good Faith Estimate of Settlement

17  Costs (hereinafter "GFE") pursuant to the Real Estate Settlement Procedures Act of 1974 (hereinafter

18  "RESPA") at $4,089.29 dated February 20, 2007. [Exhibit "D"].

19      **(h)**    At the end of the entire Subject Loan transaction, the Broker and Lender Defendants

20  presented Plaintiff with documentation that put him into a **seven (7)/one (1) year ARM Jumbo Interest**

21  **Only** with interest rate adjustments occurring every 12th month thereafter March 2012. Mr. Alaei

22  never received the 30-year fixed mortgage he was promised and certainly thought he was receiving on

23  February 27, 2009.

24      **(2)**    *Kinecta and CCG deceived Plaintiff on the Subject Loan application and Defendants*

25  *made false statements that it would get Plaintiff a loan with a 6.125% fixed interest rate for 360*

26  *months with a principal and interest payment of $3,387.89.*

27  ////

28

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

1        **(a)**    In section V of the URLA named "Monthly Income and Combined Housing Expense

2    Information," the Broker and Lender Defendants stated Plaintiff's base employment monthly income at

3    $25,000.00 [Exhibit "B"]; and his actual monthly income was $12,500.00.. However, Mr. Alaei never

4    provided, authorized and/or reviewed this erroneous inflated monthly income on the URLA. He only

5    initialed where designation by highlighted tabs and was not aware that this figure existed.

6        **(b)**    The Broker and Lender Defendants never explained or mentioned to Mr. Alaei that he

7    was getting a loan where he would pay **interest only** for seven (7) years at $3,387.89 per month and

8    then after seven years, the payment would increase from $3,387.89 to $5,013.49, an increase of

9    **$1,625.60 or 47.98%**. [Exhibit "C"]. It was explained to the Plaintiff, stated on the URLA and on the

10   Closing Agent Instructions on page 1 of 2 [Exhibit "E"] that the Principle and Interest (hereinafter "P &

11   I") payment would be $3,387.89 which would lead an average financially experienced consumer to

12   believe the payment was fully amortized and included both P & I.

13       **(c)**    The Broker and Lender Defendants also failed to provide Mr. Alaei with the proper TILA

14   disclosure documentation.

15       **(3)**    **The *Broker and Lender Defendants provided Plaintiff with a false TILA disclosure***

16   ***statement and GFE dated February 20, 2007 but not delivered until closing on February 27, 2007.***

17       **(a)**    Defendant Broker and Lenders failed to provide Plaintiff with a timely or accurate TILA

18   disclosure statement on the URLA application. Although TILA regulations require a preliminary TILA

19   disclosure to be provided to the consumer within three business days from the creditor receiving the

20   URLA, only a final TILA was provided at closing to the Plaintiff.

21       23.    As a result of the Broker and Lender Defendants actions in this matter, Plaintiff's loan is

22   now in foreclosure status with the lender, and a Notice of Trustee Sale is available for notice on August

23   12, 2009. These filings have ruined Mr. Alaei's excellent credit rating which he had spent years

24   building. As such, Plaintiff seeks rescission of the predatory loan in which he received a Notice of

25   Default on May 12, 2009. Plaintiff further seeks equitable relief on behalf of the general public and

26   monetary damages. This is an action for declaratory judgment, injunctive relief, and damages for

27   predatory mortgage lending.

28       -10-

*FIRST CAUSE OF ACTION*

**Violation of the Truth in Lending Act, 15. U.S.C. § 1601 *et seq.*, and Federal Reserve Regulation Z.**

**12 C.F.R. § 226 *et seq.*;**

**(Against Defendants Kinecta, KAFS, CCG, and JR)**

24.     Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same as though fully set forth herein.

25.     Under TILA, loan originators and assignees may be held liable for failure to make required disclosures. Plaintiff is informed and believes and thereon alleges that the Broker and Lender Defendants and/or assignees with respect to the Subject Loan failed to provide the proper disclosure notices to the Plaintiff prior to the third business day after the creditor receives the consumer's written application as required by TILA. Therefore, violating the Truth In Lending Act ("TILA") as implemented by Regulation Z.

26.     The Broker and Lender Defendants violated TILA and Regulation Z by failing to provide Plaintiff with appropriate material disclosures required under TILA, including but not limited to the following:

(a)     Plaintiff is informed and believes and thereon alleges that the Broker and Lender Defendants falsified Plaintiff's loan information and closed their eyes to the ability of Plaintiff herein to repay the loan;

(b)     Plaintiff is informed and believes and thereon alleges that Plaintiff was over charged for closing costs and related fees, which Defendants failed to disclose to Plaintiff and which were not bona fide and reasonable and thus were "finance charges" under TILA that required proper disclosure which Defendants did not make in their TILA(s). Defendant Kinecta paid CCG under the guise of paying their fees, costs and commissions, but these payments were finance charges because the value of the services of these Defendants actually performed for Plaintiff by implementing their "**3 part Deceptive Acts and Practices Predatory Loan Scheme**" as alleged above, is ZERO. Plaintiff is informed and believes and thereon alleges that the Broker and Lender Defendants did a bait and switch with a fixed mortgage; did a bait and switch with Plaintiff's 6.125% - 360 month loan application and Proposed payments of

-11-

$3,387.89; falsified Plaintiff's loan application; and then failed to disclose material terms of the Subject Loan transaction to the Plaintiff so that the Broker and Lender Defendants could receive fees, points, yield spread premiums ("YSP") and commissions. Thus, Defendants' fees, points, YSP and commissions were not bona fide and reasonable and were "finance charges" under TILA that required proper disclosure in the TILA.

(c)    Plaintiff applied for and was told that he was getting a loan with a 6.125% fixed interest rate and a schedule of 360 months with a payment of $3,387.89. The Broker and Lender Defendants did not issue Plaintiff a TILA based on Plaintiff's loan application.

27.    Any and all statute(s) of limitations relating to disclosure and notices required under 15 U.S.C. Section 1601 et seq. were tolled up to three years due to the Defendants' failure to effectively provide the required disclosures and notices in a timely manner as required by TILA.

28.    An actual controversy now exists between Plaintiff, who contends he has the right to damages and/or a new fixed rate mortgage as originally promised for the Subject Loan as against and all Defendants, and each of them, who now attempt to deny Plaintiff that right.

29.    As a direct and proximate result of these violations, Mr. Alaei was and continues to be damaged in an amount according to proof but not yet ascertained including, without limitation, statutory damages, attorney's fee recoverable under TILA, and all amounts paid or to be paid in connection with the Subject Loan transaction. In addition, Plaintiff requests rescission and cancellation of the Promissory Note and Deed of Trust and any other liens against the Subject Property as a result of Defendants' violations and regurgitation of any ill-gotten gains.

30.    Defendants were also unjustly enriched at the expense of the Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by the Defendants, and each of them.  Defendants, and each of them, received a benefit that was unjustly retained at the expense of the Plaintiff by failing to disclose charges and fees that would show up only on the final closing documents and were not disclosed prior to that as required by Federal law.

////

////

-12-

### ***SECOND CAUSE OF ACTION***

**Violation of the Real Estate and Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*. and Federal**

**Reserve Regulation X, 24 C.F.R. § 3500 *et seq*.;**

**(Against Defendants Kinecta, KAFS, CCG, and JR)**

31.     Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same as though fully set forth herein.

32.     The Subject Loan was a federally regulated mortgage loans defined as defined by the Real Estate Settlement Procedures Act ("RESPA") and implemented by Regulation X.

33.     Plaintiff is informed and believes and thereon alleges that Defendants violated *Section 8(a) of RESPA*, 12 U.S.C. § 2607(a), which provides that "no person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

34.     Plaintiff is informed and believes and thereon alleges Defendants also violated *Section 8(b) of RESPA*, 12 U.S.C. § 2607(b), provides that "no person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." *Section 8* violations are further defined by 24 C.F.R. § 3500.14. "Prohibition against kickbacks and unearned fees."

35.     Also, HUD addressed payments in the form of yield spread premiums ("YSP"), and explained that "in some cases less scrupulous brokers and lenders take advantage of the complexity of the settlement transaction and use yield spread premiums as a way to enhance the profitability of mortgage transactions without offering the borrower lower up front fees."

36.     Plaintiff is informed and believes and thereon alleges Kinecta paid CCG a YSP on Plaintiff's loan and none of the Defendants offered the Plaintiff lower up front fees for this YSP payment. Further, the YSP payment to CCG was originally promised as a credit at closing cost to the Plaintiff in the amount of $6,637.50 that was never credited at closing but instead was paid to CCG.

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

37.     HUD also established a two-part test for determining the legality of lender-payments to mortgage brokers under RESPA: (1) Whether goods or facilities were actually furnished or the services were actually performed for the compensation paid, and (2) whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed. HUD, Statement of Policy 2001-1, *66 Fed. Reg. at 53,052.*

38.     In this case at hand, the Defendants, and each of them, engaged in goods/services that were not actually performed and where the payments were not reasonably related to the value of the goods/services because the Defendants' chose to implement their *"3 part Deceptive Acts and Practices Predatory Loan Scheme"* as alleged above.

39.     The value of the services that Defendants actually performed for Plaintiff by implementing their *"3 part Deceptive Acts and Practices Predatory Loan Scheme"* as alleged above, is ZERO. Defendants did a bait and switch with a fixed rate mortgage; did a bait and switch with Plaintiff's 6.125% - 360 month loan application with Proposed payments of $3,387.89; falsified Plaintiff's loan application; and then failed to disclose material terms of the Subject Loan transaction to the Plaintiff, all so that Defendant could receive fees, costs, points, YSP's and commissions. Kinecta paid CCG fees, costs and commissions and a YSP.

40.     CCG's acceptance of a YSP and/or other payments was an unlawful kickback and/or an unearned fee under RESPA because it was not reasonably related to the performance of lawful services by the accepting Defendants. Instead of performing lawful services, the accepting Defendants implemented their *"3 part Deceptive Acts and Practices Predatory Loan Scheme"* as alleged above.

41.     The Broker and Lender Defendants should have know that CCG did not earn the YSP or other payments because, *inter alia*, "...common industry practice is that lenders follow underwriting standard that demand a review of originations and therefore lenders typically know that brokers have performed the services required..." HUD's 2001-1 Policy Statement at 53055. If Defendant Kinecta had reviewed Plaintiff's loan origination, including his loan application, Kinecta would have learned of the obvious red flag it contained.

////

-14-

42.     RESPA also prohibits any person from accepting an excessive or unearned fee. All fees on Plaintiff's loans are excessive or unearned because the loan was not reasonably related to the performance of lawful services, in that it had been falsified through defendant implementation of their **"3 part Deceptive Acts and Practices Predatory Loan Scheme"** as alleged above. Defendant CCG charged a mortgage broker fee including the YSP ($8,037.50) without any supporting information of what services were performed to warrant this charge, and then charged duplicative fees by labeling such fees as: a) processing fees, b) administrative fees and c) application fees. Once again, all of these fees paid to Defendant CCG were unlawful kickbacks an/or unearned fees under RESPA because they were not reasonably related to the performance of lawful services

43.     Pursuant to 12 U.S.C. Section 2607 (d), Plaintiff is entitled to recovered from Defendant, and each of them, and amount equal to three times the amount of any and all charges for "settlement services" paid directly or indirectly by Plaintiff, as well as actual damages, court costs, attorneys' fees and any other amounts or damages permissible under RESPA. In addition, Plaintiff requests rescission and cancellation of the Promissory Note, Deed of Trust and any other liens against the Subject Property as a result of Defendants' violations and regurgitation of any ill-gotten gains.

44.     By the actions described herein and as a proximate cause of Defendants conduct, Plaintiff was damaged, in an amount to be proven at trial but not yet ascertained.

### *THIRD CAUSE OF ACTION*

**Predatory Lending, Violation of California Financial Code § 4970 et seq.**

**(Against Defendants Kinecta, KAFS, CCG, and JR)**

45.     Plaintiff realleges and incorporates by this reference the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

46.     Plaintiff's loan was and is a covered loan as defined in California Financial Code section 4970.

47.     Plaintiff's loan was and is a consumer loan as defined in California Financial Code section 4970.

////

-15-

48.     Defendants owed Plaintiff fiduciary duties pursuant to California Financial Code section 4979.5.

49.     Plaintiff is informed and believes and thereon alleges that Defendants originated the Subject Loan in violation of and noncompliance with, California Financial Code section 4973 and 4979.6.

50.     Plaintiff is informed and believes and thereon alleges that Defendants did not provide the disclosures mandated by California Financial Code section 4970, et seq.

51.     Plaintiff is informed and believes and thereon alleges that Defendants originated the loan knowingly and recklessly disregarding Defendants' violation(s) of California Financial Code section 4970 et seq. or other unlawful conduct.

52.     By the Broker and Lender Defendants' actions and their **"3 *part Deceptive Acts and Practices Predatory Loan Scheme"*** as alleged above, the Broker and Lender Defendants engaged in predatory lending. Plaintiff individually and on behalf of the public, seeks an order of this Court enjoining Defendants and prohibiting each of the said Defendants from predatory loan practices of the nature and kind herein alleged, as the public and Plaintiff will be irreparably harmed if such an order is not granted.

53.     By the actions and other conduct described herein, Defendants are guilty of malice, fraud or oppression, as defined in Civil Code 3294, and Mr. Alaei should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants. As a proximate result of Defendants' conduct, Plaintiff has further sustained damages, including attorney fees and legal costs, in an amount to be proven at the time of trial. In addition, Plaintiff requests rescission and cancellation of the Promissory Note, Deed of Trust and any other liens against the Subject Property as a result of Defendants' violations and regurgitation of any ill-gotten gains.

////

////

////

////

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

### *FOURTH CAUSE OF ACTION*

**Elder Abuse: Financial Abuse; California Welfare & Institutions Code § 15600 et seq.**

**(Against Defendants Kinecta, KAFS, CCG, and JR)**

54.    Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same as though fully set forth herein.

55.    The Broker and Lender Defendants, and each of them, financially abused Mr. Alaei by implementing their ***3 part Deceptive Acts and Practices Predatory Loan Scheme*** as alleged above. *Section 15610.07(a) of the Welfare and Institutions Code* defines "Abuse of an Elder" in general as "[p]hysical abuse, neglect, **financial abuse**, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering" (emphasis added). Further, *section 15600 et seq. of the Welfare and Institutions Code* defines Financial Abuse as a situation where any person or entity does or assists in, "taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both." *Cal. Welf. & Inst. Code § 15610.30(a)(2) (2005).*

56.    The Broker and Lender Defendants violated Mr. Alaei's trust by implementing their ***3 part Deceptive Acts and Practices Predatory Loan Scheme*** as alleged above, and by appropriating, secreting, and taking Mr. Alaei's money and equity for their own benefit and to the harm of Plaintiff. Thereafter, Defendants concealed those facts after the Mr. Alaei's trust was violated as set forth in more detail above. Further, Defendants knew or should have known that their conduct was directed towards a senior. Mr. Alaei suffered emotional damages as a result as Defendants conduct as alleged herein was malicious and intended to cause and did cause Mr. Alaei to suffer pain and mental suffering in the form of mental anguish, emotional and physical distress, humiliation, worry and anxiety.

57.    By the actions and other conduct described herein, Defendants are guilty of malice, fraud or oppression, as defined in Civil Code 3294, and Mr. Alaei should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants. As a proximate result of Defendants' conduct, Plaintiff has further sustained damages, including attorney fees and legal costs, in an amount to be proven at the time of trial. In addition, Plaintiff requests rescission and cancellation of

-17-

1 | the Promissory Note, Deed of Trust and any other liens against the Subject Property as a result of

2 | Defendants' violations and regurgitation of any ill-gotten gains.

3 | ### *FIFTH CAUSE OF ACTION*

4 | **Violation of the Unfair Competition Act, California Business and Professions Code § 17200 *et seq.*;**

5 | **(Against Defendants Kinecta, KAFS, CCG, and JR)**

6 |      58.    Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same

7 | as though fully set forth herein.

8 |      59.    Defendants, and each of them, have committed acts of unfair business practices, as

9 | defined by California Business and Professions Code Section 17200, et. seq., by engaging in acts and

10 | practices which include, but are not limited to their **"3 part Deceptive Acts and Practices Predatory**

11 | **Loan Scheme"** as alleged above, and including but not limited to making loans based on borrower

12 | information which Defendants, and each of them, falsified; using bait and switch tactics with a fixed rate

13 | mortgage and with the initial loan application; making loans without confirming or verifying borrower

14 | information; making loans without providing the borrower with sufficient, accurate and understandable

15 | information regarding the terms and conditions of the loan; making loans without providing the

16 | borrower with sufficient, accurate and understandable information regarding the nature and extent of the

17 | financial risk being assumed by the borrower; and making loans without regard to the financial ability of

18 | the borrower to pay.

19 |      60.    These acts all as alleged above violate California Business and Professions Code Section

20 | 17200, et. seq. in the manner alleged above, and, based on information and belief, in the following

21 | further respects: Defendants' conduct threatens an incipient violation of various consumer protection

22 | statutes, or which violate the policy or spirit of such laws, including, but not limited to, California

23 | Business and Professions Code Section 17500; California Civil Code Section 1921; California Civil

24 | Code Section 1920; California Civil Code Section 1770; California Civil Code Section 1709, 1710 and

25 | 1711; Section 1639 of Title 15 of the United States Codes, together with 12 CFR 226.1 (Regulation Z).

26 |      61.    All Defendants engaged in the following unfair business practices including, without

27 | limitation, the following:

28 |

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

1    **(a)**    Implementing Defendants' **"3 part Deceptive Acts and Practices Predatory Loan**

2    **Scheme"**

3    **(b)**    Engaging in predatory lending practices in dealings with Plaintiff including but not

4    limited to, the use of high pressure sales tactics and the falsification of Plaintiff's loan application

5    information;

6    **(c)**    Self-dealing at the expense of Plaintiff;

7    **(d)**    Failing to provide notices and disclosures required by TILA and RESPA;

8    **(e)**    Violating TILA; Violating RESPA; Violating the False Advertising Act, California

9    Business and Professions Code Section 17500 *et seq.*, or any other applicable statute;

10    **(f)**    Violating California Civil Code Sections 1709, 1710 and 1711;

11    **(g)**    Charging and collecting fees in excess than those permitted under statute;

12    **(h)**    Charging, collecting and distributing illegal kickbacks under the guise of fees and

13    commission for services that had no reasonable value due to the Defendants **"3 part Deceptive Acts and**

14    **Practices Predatory Loan Scheme";** and

15    **(i)**    Other acts that Plaintiff is presently unaware of, but may be made aware of in discovery

16    in this matter.

17    62.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

18    them, obtained illegal kickbacks from Plaintiff's equity in his home. Predictably, Mr. Alaei is now facing

19    foreclosure on his home. Plaintiff has suffered damages in an amount to be proven at the time of trial.

20    63.    Plaintiff individually and on behalf of the public, seeks an order of this Court enjoining

21    Defendants and prohibiting each of the said Defendants from predatory loan practices of the nature and

22    kind herein alleged, as the public and Plaintiff will be irreparably harmed if such an order is not granted.

23    Plaintiff also requests temporary and permanent injunctive relief to enjoin Defendants' enforcement of

24    the Promissory Note and Deed of Trust.

25    64.    Defendants have been unjustly enriched at the expense of the Plaintiff, who therefore is

26    entitled to equitable restitution and disgorgement of profits realized by Defendants as result of the

27    unfair, unlawful, deceptive, untrue and/or misleading advertising practices.

28

-19-

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

65.    Defendants are guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants. Moreover, because Plaintiff brings this action on behalf of himself and on behalf of the general public, he is entitled to reasonable attorneys' fees pursuant to California Code of Civil Procedure section 1021.5. Plaintiff has sustained damages, including attorney fees and legal costs, and will sustain additional damages in prosecuting this action. In addition, Plaintiff requests rescission and cancellation of the Promissory Note, Deed of Trust and any other liens against the Subject Property as a result of Defendants' violations and regurgitation of any ill-gotten gains.

## *SIXTH CAUSE OF ACTION*

**Violation of the False Advertising Act, California Business and Professions Code § 17500 *et seq.*;**

**(Against Defendants Kinecta, KAFS, CCG, and JR)**

66.    Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same as though fully set forth herein.

67.    Plaintiff is informed and believes and thereon alleges that Defendants implemented their *"3 part Deceptive Acts and Practices Predatory Loan Scheme"* as alleged above. The advertising, promotional materials and other written or oral promotion efforts undertaken by Defendants to induce consumers to enter into loan transactions contained statements that were deceptive, untrue and/or misleading, or omitted material information, and which were known, or by the exercise of reasonable care should have been known by Defendant to be deceptive, untrue and/or misleading, in violation of California Business and Professions Code section 17500 *et seq.*

68.    Plaintiff is informed and believes and thereon alleges that Defendants' use of various forms of advertising call attention to or give publicity to the sale of their goods or services, and other practices, as set forth above, which were not as advertised or as otherwise represented, constituted unfair competition, deceptive untrue and/or misleading advertising and unlawful business practice within the meaning of California Business and Professions Code sections 17200 *et seq.*, and 17500 *et seq.*

69.    These advertisements and practices have deceived and injured Plaintiff and are likely to deceive and injure the consuming public in violation of those sections.

-20-

70.     Pursuant to California Business and Professions Code sections 17203 and 17535, Plaintiff individually and on behalf of the public, seeks an order of this Court enjoining Defendants from continuing to engage in their false advertising practices. The public and Plaintiff will be irreparably harmed if such an order is not granted. Plaintiff also requests temporary and permanent injunctive relief to enjoin Defendants' enforcement of the Promissory Note and Deed of Trust.

71.     Defendants have been unjustly enriched at the expense of the Plaintiff, who therefore is entitled to equitable restitution and disgorgement of profits realized by Defendants as result of the unfair, unlawful, deceptive, untrue and/or misleading advertising practices. Plaintiff individually and on behalf of the public, further seeks an order of this Court enjoining Defendants and prohibiting each of the said Defendants from predatory loan practices of the nature and kind herein alleged, as the public and Plaintiff will be irreparably harmed if such an order is not granted.

72.     Defendants are guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants. Moreover, because Plaintiff brings this action on behalf of himself and on behalf of the general public, he is entitled to reasonable attorneys' fees pursuant to California Code of Civil Procedure section 1021.5. In addition, Plaintiff requests rescission and cancellation of the Promissory Note, Deed of Trust and any other liens against the Subject Property as a result of Defendants' violations and regurgitation of any ill-gotten gains.

### *SEVENTH CAUSE OF ACTION*

**Intentional Misrepresentation, California Civil Code §§ 1709-1710;**

**(Against Defendants Kinecta, KAFS, CCG, and JR)**

73.     Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same as though fully set forth herein.

74.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, implement their *"3 part Deceptive Acts and Practices Predatory Loan Scheme"* as alleged above.

////

////

-21-

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

75.     Plaintiff is informed and believes and thereon alleges that Defendants knowingly and willfully induced Plaintiff to enter into the loan agreement by making false oral statements and omitting material information regarding the terms of the loan and Plaintiff's application.

76.     Plaintiff is informed and believes and thereon alleges that Defendants knew that these representations were false at the time they were made or made the false representations in reckless disregard of the truth.

77.     Plaintiff is informed and believes and thereon alleges that Defendants intended that Plaintiff rely on the misrepresentations.

78.     Plaintiff reasonably relied on Defendants' misrepresentations. Plaintiff relied upon Defendants' misrepresentations because he is an elderly 79 year old man who thought that Defendants were acting as his agent and in his best interests.

79.     Had Plaintiff known the truth, Plaintiff would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their Scheme.

80.     As a proximate result of his reasonable reliance on Defendants' misrepresentation(s), Plaintiff sustained damages in an amount to be proven at trial but not yet ascertained. Plaintiff reasonably relied on Defendants' misrepresentations which were a substantial factor in causing Plaintiff's damages.

81.     Defendants are guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiff should therefore recover, in addition to actual damages and attorney's fees, damages to make an example of and to punish Defendants. In addition, Plaintiff requests rescission and cancellation of the Promissory Note, Deed of Trust and any other liens against the Subject Property as a result of Defendants' violations and regurgitation of any ill-gotten gains.

### EIGHTH CAUSE OF ACTION

**Negligent Misrepresentation, California Civil Code §§ 1709-1710;**

**(Against Defendants Kinecta, KAFS, CCG, and JR)**

82.     Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same as though fully set forth herein.

-22-

83.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, implement their **"3 part Deceptive Acts and Practices Predatory Loan Scheme"** as alleged above.

84.     Plaintiff is informed and believes and thereon alleges that Defendants had no reasonable basis for believing that the representations were true when the representations were made.

85.     Plaintiff is informed and believes and thereon alleges that Defendants intended that Plaintiff rely on the misrepresentations.

86.     Plaintiff reasonably relied on Defendants' misrepresentations. Plaintiff relied upon Defendants misrepresentations because he is an elderly 79 year old man who thought that Defendants were acting as his agent and in his best interests.

87.     Had Plaintiff known the truth, Plaintiff would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their Scheme.

88.     As a proximate result of his reasonable reliance on Defendants' misrepresentation(s), Plaintiff sustained damages in an amount to be proven at trial but not yet ascertained. Plaintiff reasonably relied on Defendant's misrepresentations which were a substantial factor in causing Plaintiff's damages.

### NINTH CAUSE OF ACTION

**Violation of Cal. Civil Code § 1711 - Fraud on the Public;**

**(Against Defendants Kinecta, KAFS, CCG, and JR)**

89.     Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this cause of action.

90.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, practiced a deceit with intent to defraud Plaintiff and the Public through their **"3 part Deceptive Acts and Practices Predatory Loan Scheme"** as alleged above.

91.     Plaintiff is informed and believes and thereon alleges that Defendants' fraud was the proximate cause of Plaintiff's damages as alleged herein.

92.     Plaintiff is informed and believes and thereon alleges that Defendant were guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiff should therefore

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

1  recover, in addition to actual damages and attorney's fees, damages to make an example of and to

2  punish Defendants. In addition, Plaintiff requests rescission and cancellation of the Promissory Note,

3  Deed of Trust and any other liens against the Subject Property as a result of Defendants' violations and

4  regurgitation of any ill-gotten gains.

### *TENTH CAUSE OF ACTION*

**Rescission and Cancellation of Deed of Trust, California Civil Code § 1689, California Civil Code**

**§ 3412; and Court's Inherent Equitable Authority;**

**(Against All Defendants)**

9       93.     Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same

10  as though fully set forth herein.

11      94.     Plaintiff's consent to the Broker and Lender Defendant's Mortgage Loan was obtained by

12  the Broker and Lender Defendants through mistake, fraud, and undue influence by the implementation

13  of their **"3 part Deceptive Acts and Practices Predatory Loan Scheme"** as alleged above.

14      95.     Plaintiff is informed and believes and thereon alleges that the Broker and Lender

15  Defendants had intent to deceive Mr. Alaei and to unduly influence him to consent to the Subject Loan

16  which the Broker and Lender Defendants knew or should have known Plaintiff did not understand or

17  comprehend, and which Defendants knew or should have known Plaintiff did not have sufficient income

18  to afford or pay, did fraudulently conceal from Plaintiff that Plaintiff was thereby placing his sole

19  material possession, his home, at severe risk of loss.

20      96.     Plaintiff is informed and believes and thereon alleges that the active misrepresentations

21  by the Broker and Lender Defendants, and their silence and deceit, were false and fraudulent.

22      97.     Plaintiff is informed and believes and thereon alleges that  at the time the Broker and

23  Lender Defendants made the misrepresentations and engaged in the concealment and deceit as alleged

24  herein, and at the time Plaintiff signed any of the Loan Application and/or the Loan Documents, Plaintiff

25  did not know that the misrepresentations, deceit and inducements by Defendants were false and

26  fraudulent, but instead believed them to be truthful and reasonably relied on them, thereby entering into

27

28

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

1   the Subject Loan without the benefit of the true facts, and by duress, undue influence and coercion and

2   mistake.

3        98.    As a result of the fraudulent misrepresentations, deceit and inducements by the Broker

4   and Lender Defendants, Plaintiff entered into the Subject Loan transaction, and has incurred substantial

5   financial damages and damage to his credit as herein alleged. Plaintiff hereupon serves notice of his

6   demand for damages on the grounds of fraudulent misrepresentations and inducement, duress, undue

7   influence, coercion and mistake by Defendants as alleged herein. To the extent if the Subject Loan

8   transaction documents contain an exculpatory clause in favor of any of the Defendants purporting to

9   release Defendants from their own fraud, or the fraud of others, Plaintiff alleges that such a clause is

10  unenforceable pursuant to Civil Code section 1668 and other applicable law.

11       99.    Plaintiff hereby demands that the Promissory Note, Deed of Trust and any future Deed of

12  Sale or Trustee's Deed of Sale be cancelled and rescinded and that Defendants restore to Plaintiff the

13  position he held prior to the Subject Loan. Plaintiff further alleges that Defendants, and each of them,

14  have been unjustly enriched as a result of the Broker and Lender Defendants *"3 part Deceptive Acts and*

15  *Practices Predatory Loan Scheme"* as alleged above, and that the amount of all commissions earned by

16  Defendants and all profits earned by Defendants as a result of the Subject Loan must be disgorged by

17  Defendants to Plaintiff.

18       100.    Plaintiff also hereby demands that the court find that Kinecta's claim to the Subject

19  Property is without any right or merit. Plaintiff requests temporary and permanent injunctive relief to

20  enjoin Defendants' enforcement of the Promissory Note and Deed of Trust. Further, the Plaintiff

21  requests an order from this court enjoining the Defendants, and Kinecta in particular, from filing any

22  future actions to collect upon the Subject Loan and an order enjoining the Defendants, and Kinecta in

23  particular, from filing a Notice of Trustee Sale Date and/or an Unlawful Detainer Action to remove the

24  Plaintiff from the Subject Property. If a Trustee's Sale is not enjoined after August 12, 2009 or canceled,

25  serious injury will result to Plaintiff. In addition, Plaintiff requests rescission and cancellation of the

26  Promissory Note, Deed of Trust and any other liens against the Subject Property as a result of

27

28

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

1    Defendants' violations and regurgitation of any ill-gotten gains. Plaintiff further request attorneys' fees

2    and costs.

### *ELEVENTH CAUSE OF ACTION*

**Breach of Fiduciary Duty;**

**(Against Defendants Kinecta, KAFS, CCG, and JR)**

6        101.    Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same

7    as though fully set forth herein.

8        102.    California law imposes on the insurance agents/ real estate agents/and mortgage brokers,

9    as fiduciaries, the same obligation of undivided service and loyalty that it imposes on a trustee in favor

10   of a beneficiary.

11       103.    Plaintiff is informed and believes and thereon alleges that Defendants owed Plaintiff

12   fiduciary duties of utmost loyalty, good faith and diligence and breached those duties by:

13       **(a)**    Implementing their **"*3 part Deceptive Acts and Practices Predatory Loan Scheme*"** as

14   alleged above;

15       **(b)**    Baiting Plaintiff with a 30-year fixed mortgage that Defendants had no intention of

16   consummating for Plaintiff;

17       **(c)**    Misleading Plaintiff to believe that his monthly mortgage payments and interest rate on

18   the loan that he was applying for would be lower than they ultimately were;

19       **(d)**    Failing to explain the terms of the Subject Loan transactions to Plaintiff;

20       **(e)**    Inducing Plaintiff to sign loan documents by either misrepresenting the terms or failing to

21   disclose the terms;

22       **(f)**    Failing to disclose all charges incurred in connection with the refinance;

23       **(g)**    Inducing Plaintiff to sign a loan that is more financially burdensome than the original

24   loan presented to Plaintiff on his original application;

25       **(h)**    Falsifying Plaintiff's income, accounts and assets on his loan application;

26   ////

27   ////

28

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

104.    Plaintiff is informed and believes and thereon alleges that Defendants engaged in their conduct alleged herein for the purpose of advancing their own financial interest and in callous disregard of the foreseeable financial consequences to Plaintiff.

105.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, operated as agents of Defendants in this cause of action abandoned their fiduciary duty to Plaintiff.

106.    Plaintiff is informed and believes and thereon alleges that Defendants failed to act diligently by failing to evaluate Plaintiff's ability to repay the loans, failing to disclose all material terms of the Subject Loan transaction, and failing to comply with applicable consumer protections intended to benefit Plaintiff.

107.    As a result of Defendants' breach of their fiduciary duties to Plaintiff, Plaintiff has sustained damages to be proved at trial but not yet ascertained.

108.    Defendant's conduct as alleged herein was a substantial factor in causing the damages sustained by Plaintiff, and as a direct, proximate and legal result of the above alleged breach of fiduciary duty, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial, including, but not limited to, damages for loss of property and money, damages for emotional distress, and attorney's fees.

109.    In addition, Plaintiff requests rescission and cancellation of the Promissory Note, Deed of Trust and any other liens against the Subject Property as a result of Defendants' violations and regurgitation of any ill-gotten gains.

### *TWELTH CAUSE OF ACTION*

### Negligence

### (Against Defendants Kinecta, KAFS, CCG, and JR)

110.    Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same as though fully set forth herein.

111.    Because a mortgage loan broker is required to exercise reasonable care and diligence in any transaction and is bound to exercise his or her skill for the benefit of the principal, the agent is liable

-27-

1  for any damages suffered by the principal as a result of any negligence in the performance of his or her

2  agency duties.

3      112.    Defendants, and each of them, owed Plaintiff a duty to act with that degree of skill,

4  prudence and diligence as other mortgage brokers and lenders of ordinary skill and capacity in the

5  performance of the services that they undertake.

6      113.    A reasonably prudent mortgage loan broker would not have implemented their **"3 part**

7  **Deceptive Acts and Practices Predatory Loan Scheme"** as alleged above nor would they have directed

8  Plaintiff to the Kinecta loan products nor originated such loans.

9      114.    Defendants, and each of them, knew or should have known to utilize the best practices

10  for underwriting, originating and issuing loans when considering the Subject Loan to Plaintiff but

11  negligently failed to do so.

12      115.    Defendants breached its duty by encouraging Plaintiff to sign a loan with different terms

13  than those they had represented to Plaintiff on his original loan application.

14      116.    By their conduct as alleged herein, Defendants were the proximate cause of damages

15  sustained by Plaintiff's in an amount to be proven at trial but not yet ascertained.

16                      ***THIRTEENTH CAUSE OF ACTION***

17              **Breach of Implied Covenant of Good Faith and Fair Dealing;**

18              **(Against Defendants Kinecta, KAFS, CCG, and JR)**

19      117.    Plaintiff realleges and incorporates by this reference all the allegations of the preceding

20  aragraphs of this Complaint as though fully set forth herein.

21      118.    The Subject Loan, including the promissory note and deed of trust, imposed upon

22  Defendants a covenant of good faith and fair dealing in performing the terms and conditions of the

23  Subject Loan agreement and carrying out its purpose and intent.

24      119.    Plaintiff is informed and believes and thereon alleges that Defendants breached the

25  implied covenant of good faith and fair dealing when Defendants:

26      **(a)**    prepared and directed Plaintiff to sign the Loan Application;

27

28                              -28-

1     **(b)**     secretly and fraudulently failed to take any steps to verify any of the information contain

2     in the Loan Application;

3     **(c)**     changed the stated income on the loan application in order to qualify the loan, and kept

4     this fact hidden from Plaintiff;

5     **(d)**     changed the interest rate on the loan application and kept this fact hidden from Plaintiff;

6     **(e)**     approved the Kinecta Loan based on information they knew or should have known to be

7     false and inaccurate;

8     **(f)**     fraudulently induced Plaintiff to accept the Kinecta Loan;

9     **(g)**     Other acts of which Plaintiff is presently unaware.

10     120.    As a proximate result of the aforementioned acts and omissions by Defendants, Plaintiff

11     has suffered loss of monies in a sum to be proven at the time of trial. It has also become reasonably

12     necessary for Plaintiff to retain counsel to recover amounts due under the contract and therefore request

13     attorney's fees and costs.

14     121.    Plaintiff is informed and believes and thereon alleges that the aforementioned acts were

15     performed by Defendants maliciously, fraudulently and oppressively entitling Plaintiff to punitive

16     damages in an amount appropriate to punish these Defendants.

17     122.    These Defendants knew their conduct was directed to an elderly 79 year old man who

18     was more vulnerable to said conduct than other members of the general public, or that the Broker and

19     Lender Defendants' actions would cause harm and injury to Mr. Alaei and/or their heirs and

20     beneficiaries, thereby entitling Plaintiff to trebling of any punitive damages award, under Civil Code

21     section 3345. In addition, Plaintiff requests rescission and cancellation of the Promissory Note, Deed of

22     Trust and any other liens against the Subject Property as a result of Defendants' violations and

23     regurgitation of any ill-gotten gains.

24     ////

25     ////

26     ////

27     ////

28

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

### *FOURTHEENTH CAUSE OF ACTION*

**Declaratory Judgment**

**(Against All Defendants)**

123.  Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

124.  A dispute has arisen between and among the Plaintiff and the Defendants herein, and each of them, as to the duties and obligations of the respective parties with regard to the Subject Loan transaction, foreclosure documents and/or foreclosure proceedings.

125.  These disputes concern, but are not necessarily limited to, the rights and duties of the parties under the Subject Loan transaction, promissory notes, and deed of trust between them, the various statutes at issue in this litigation, the ownership rights to the Subject Property, and/or the right of Defendants to foreclose on the Subject Property.

126.  As these questions concern issues with regard to the Subject Property, they are thus required to seek this relief.

127.  Plaintiff further alleges that a declaration of rights and duties of the parties herein by the Court is essential to determine the actual status and validity of the mortgage loan transaction and any rights duties and/or obligations as to the enforcement of it.

128.  Plaintiff has exhausted any and all applicable administrative remedies required under the law and for which notice has been provided to Plaintiff.

129.  As a proximate result of the aforementioned acts and omissions by Defendants, Plaintiff has suffered loss of monies in a sum to be proven at the time of trial. It has also become reasonably necessary for Plaintiff to retain counsel to recover amounts due under the contract and therefore request attorney's fees and costs.

130.  Plaintiff requests an order that enjoins the Defendants, and Kinecta in particular, from filing any future actions to collect upon the Subject Loan and an order enjoining the Defendants, and Kinecta in particular, from filing a Notice of Trustee Sale Date and/or an Unlawful Detainer Action to remove the Plaintiff from the Subject Property. In addition, Plaintiff requests rescission and cancellation

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

of the Promissory Note, Deed of Trust and any other liens against the Subject Property as a result of Defendants' violations and regurgitation of any ill-gotten gains.

131.    Plaintiff further requests a declaratory judgment from the court as to the duties, rights, and obligations of the parties as follows:

(a.)    liability of the Broker and Lender Defendants under the Truth in Lending Act pursuant to 15 U.S.C. §1643;

(b.)    regarding the implementation of Defendants' **"3 *part Deceptive Acts and Practices Predatory Loan Scheme"***

(c.)    regarding the engagement in predatory lending practices in dealings with Plaintiff including but not limited to, the use of high pressure sales tactics and the falsification of Plaintiff's loan application information;

(d.)    regarding self-dealing at the expense of Plaintiff;

(e.)    regarding the failure to provide notices and disclosures required by TILA and RESPA;

(f.)    liability under TILA; RESPA; the False Advertising Act, California Business and Professions Code Section 17500 *et seq.*, and/or any other applicable statutes;

(g.)    liability under California Civil Code Sections 1709, 1710 and 1711;

(h.)    regarding the charge and collection of fees in excess than those permitted under statute;

(i.)    regarding the charge, collection and distribution of illegal kickbacks under the guise of fees and commission for services that had no reasonable value due to the Defendants **"3 *part Deceptive Acts and Practices Predatory Loan Scheme"*;**

(j.)    regarding rescission, cancellation and/or enforceability of the Promissory Note and Deed of Trust;

(k.)    regarding rescission, cancellation and/or enforceability of the Notice of Default and any other foreclosure documents;

(l.)    regarding the legality of any foreclosure proceedings; and

(m.)   regarding other acts that Plaintiff is presently unaware of, but may be made aware of in discovery in this matter.

### ***PRAYER FOR RELIEF***

WHEREFORE, Plaintiff prays for judgment on the above causes of action against Defendants as follows:

**FIRST CAUSE OF ACTION:**

1.   For actual and consequential damages;

2.   For interest at the legal rate;

3.   For statutory damages pursuant to statute;

4.   For attorney's fees and costs pursuant to statute;

5.   For cancellation of instruments and liens on Subject Property; and

6.   For rescission and regurgitation of any ill-gotten gains.

**SECOND CAUSE OF ACTION:**

1.   For actual and consequential damages;

2.   For interest at the legal rate;

3.   For statutory damages pursuant to statute;

4.   For attorney's fees and costs pursuant to statute;

5.   For cancellation of instruments and liens on Subject Property; and

6.   For rescission and regurgitation of any ill-gotten gains.

**THIRD CAUSE OF ACTION:**

1.   For actual and consequential damages;

2.   For punitive damages pursuant to California Civil Code section 3294;

3.   For attorney's fees and costs pursuant to statute;

4.   For court enjoining Defendants and prohibiting each from predatory loan practices and enforcement of the Promissory Note and Deed of Trust;

5.   For interest at the legal rate; and

6.   For rescission and regurgitation of any ill-gotten gains.

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

**FOURTH CAUSE OF ACTION:**

      1.     For actual and consequential damages;

      2.     For punitive damages pursuant to California Civil Code section 3294;

      3.     For attorney's fees and costs pursuant to statute;

      4.     For interest at the legal rate; and

      5.     For rescission and regurgitation of any ill-gotten gains.

**FIFTH CAUSE OF ACTION:**

      1.     For actual and consequential damages;

      2.     For punitive damages pursuant to California Civil Code section 3294;

      3.     For temporary and permanent injunctive relief to enjoin Defendants' conduct and enforcement of the Promissory Note and Deed of Trust and an order prohibiting each from predatory loan practices;

      4.     For interest at the legal rate;

      5.     For attorney's fees pursuant to California Civil Procedure Code Section 1021.5;

      6.     For cancellation of instruments and liens on Subject Property; and

      7.     For rescission and regurgitation of any ill-gotten gains.

**SIXTH CAUSE OF ACTION:**

      1.     For actual and consequential damages;

      2.     For a Court order enjoining Defendants and prohibiting each from continuing to engage in false advertising pursuant to California Business and Professions Code Sections 17203 and 17535;

      3.     For attorney's fees pursuant to California Civil Procedure Code Section 1021.5;

      4.     For a Court order enjoining Defendants and prohibiting each from predatory loan practices; and

      5.     For interest at the legal rate;

////

////

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

**SEVENTH CAUSE OF ACTION**

    1.     For actual and consequential damages;

    2.     For punitive damages pursuant to California Civil Code section 3294;

    3.     For interest at the legal rate; and

    4.     For rescission and regurgitation of any ill-gotten gains.

**EIGHTH CAUSE OF ACTION:**

    1.     For actual and consequential damages;

    2.     For interest at the legal rate;

**NINTH CAUSE OF ACTION:**

    1.     For actual and consequential damages;

    2.     For punitive damages pursuant to California Civil Code section 3294;

    3.     For attorney's fees and costs pursuant to statute;

    4.     For interest at the legal rate; and

    5.     For rescission and regurgitation of any ill-gotten gains.

**TENTH CAUSE OF ACTION:**

    1.     For actual and consequential damages;

    2.     For interest at the legal rate;

    3.     For cancellation of instruments and liens on Subject Property; and

    4.     For rescission and regurgitation of any ill-gotten gains.

    5.     For an order that Defendants deliver the Deed of Trust to the court and cancellation of that deed; and

    6.     For temporary and permanent injunctive relief to enjoin Defendants' conduct and enforcement of the Promissory Note and Deed of Trust and an order prohibiting each from predatory loan practices;

////

////

////

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

7.      For an order from this court enjoining the Defendants and Kinecta in particular, from filing any future actions to collect upon the Subject Loan and an order enjoining the Defendants, and Kinecta in particular, from filing a Notice of Trustee Sale Date and/or an Unlawful Detainer Action to remove the Plaintiff from the Subject Property.

8.      For attorney's fees and costs pursuant to contract and/or note;

## ELEVENTH CAUSE OF ACTION:

1.      For actual and consequential damages;

2.      For interest at the legal rate; and

3.      For attorney's fees and costs pursuant to statute;

4.      For regurgitation of any ill-gotten gains.

## TWELFTH CAUSE OF ACTION:

1.      For actual and consequential damages;

2.      For interest at the legal rate;

## THIRTEENTH CAUSE OF ACTION:

1.      For actual and consequential damages;

2.      For interest at the legal rate;

3.      For regurgitation of any ill-gotten gains;

4.      For attorney's fees and costs pursuant to contract and/or note.

## FOURTHEENTH CAUSE OF ACTION:

1.      For a declaratory judgment as to the duties, rights, and obligations of the parties as follows:

(a.)    liability of the Broker and Lender Defendants under the Truth in Lending Act pursuant to 15 U.S.C. §1643;

(b.)    regarding the implementation of Defendants' **"3 part Deceptive Acts and Practices Predatory Loan Scheme"**.

////

////

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

(c.)     regarding the engagement in predatory lending practices in dealings with Plaintiff including but not limited to, the use of high pressure sales tactics and the falsification of Plaintiff's loan application information;

(d.)     regarding self-dealing at the expense of Plaintiff;

(e.)     regarding the failure to provide notices and disclosures required by TILA and RESPA;

(f.)     liability under TILA; RESPA; the False Advertising Act, California Business and Professions Code Section 17500 *et seq.*, and/or any other applicable statutes;

(g.)     liability under California Civil Code Sections 1709, 1710 and 1711;

(h.)     regarding the charge and collection of fees in excess than those permitted under statute;

(i.)     regarding the charge, collection and distribution of illegal kickbacks under the guise of fees and commission for services that had no reasonable value due to the Defendants **"3 part Deceptive Acts and Practices Predatory Loan Scheme"**;

(j.)     regarding rescission, cancellation and/or enforceability of the Promissory Note and Deed of Trust;

(k.)     regarding rescission, cancellation and/or enforceability of the Notice of Default and any other foreclosure documents;

(l.)     regarding the legality of any foreclosure proceedings; and

(m.)     regarding other acts that Plaintiff is presently unaware of, but may be made aware of in discovery in this matter.

////

////

////

////

////

////

-36-

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

**FOR ALL CAUSES OF ACTION**

     1.    That the Court assume supplemental jurisdiction over all state law claims, pursuant to 28 U.S.C. Section 1367

     2.    For interest at the legal rate;

     3.    For costs of suit incurred herein; and

     4.    For such other and further relief as the court may deem proper.

Respectfully Submitted,

DATED:  8/13/09

CATALYST LAW GROUP, APC

Christopher Villasenor
Attorney for Plaintiff
MOHAMMAD A. ALAEI

Complaint For Damages, Rescission, Declaratory and Injunctive Relief

**EXHIBIT "A"**

| A. | B. | TYPE OF LOAN |
|---|---|---|

Form approved OMB No. 2502-0265

**Final**

**SETTLEMENT STATEMENT**

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

| B. TYPE OF LOAN |
|---|
| 1. [ ]FHA   2. [ ]FMHA   3. [ ]CONV. UNINS. |
| 4. [ ]VA   5. [ ]CONV. INS. |
| 6. File Number: (Escrow)   7. Loan Number: |
| 33710-MW   /MR   100014299 |
| 8. Mortgage Insurance Case Number: |

C. NOTE:  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

D. NAME OF BORROWER:  Mohammad Alaei, Susanne Alaei
    28715 Stonegate Drive, Valley Center  CA 92082

E. NAME OF SELLER:

| F. NAME OF LENDER: | O. PROPERTY LOCATION: |
|---|---|
| Kinecta Federal Credit Union | 28715 Stonegate Drive |
| 1440 Rosecrans Ave. | Valley Center, CA  92082 |
| Manhattan Beach, CA 90266 | |

| H. SETTLEMENT AGENT:  First Class Escrow | I. SETTLEMENT DATE: |
|---|---|
| 2745 E. Chapman Ave., Orange  CA 92869 | February 27, 2007 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 8,391.15 | 403. | |
| 104. Loan to be paid off | 658,792.76 | 404. | |
| First Federal | | | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 117. | | 417. | |
| 120. Gross Amount Due From Borrower | 667,183.91 | 420. Gross Amount Due To Seller | |
| 200. Amounts Paid By or In Behalf of Borrower | | 500. Reductions In Amount Due From Seller | |
| 201. Deposit or earnest money | * 3,706.25 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 663,750.00 | 502. Settlement charges to seller (line 1400) | |
| Kinecta Federal Credit Union | | 503. Existing loan taken subject to | |
| 203. Existing loan(s) taken subject to | | | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. NEW LOAN CREDITED | 292.09 | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 667,748.25 | 520. Total Reduction Amount Due | |
| 300. Cash At Settlement From/To Borrower | | 601. Cash At Settlement To/From Seller | |
| 301. Gross amount due from borrower (line 120) | 667,183.91 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 667,748.25 | 602. Less total reductions in amount due seller (line 520) | |
| 303. CASH ( FROM   X TO) BORROWER | 564.34 | 603. CASH (X TO)   FROM SELLER | .00 |

* REFER TO ATTACHED DETAIL STATEMENTS          Original

Final   -2-   Esc. No. 33710-MM

| | SECTION L | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION | | | |
| Based on price $ | | | |
| Division of Commission (Line 700) as follows: | | | |
| 701. $ | to | | |
| 702. $ | to | | |
| 703. Commission Paid at settlement | | | |
| 704. | | | |
| 705. | | | |
| 706. | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee | | | |
| 802. Loan Discount | | | |
| 803. Appraisal Fee    to Coast Capital Group | | | |
| 804. Credit Report | | | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee to | | | |
| 807. Service Fee | | | |
| 808. Yield Spread to Ccd to Coast Capital Gro "P.O.C" $6,637.50 | | | |
| 809. PROCESSING TO CCG to COAST CAPITAL GROUP | | 695.00 | |
| 810. ADMIN FEE TO CCG to Coast Capital Group | | 600.00 | |
| 811. PREMIUM FEE CREDIT to Coast Capital Group | | 75.00 | |
| 812. Appraisal Review to KINECTA to Kinecta Federal Credit Unio | | 75.00 | |
| 813. FLOOD CERT to KINECTA to Kinecta Federal Credit Union | | 23.50 | |
| 814. TAX SERVICE TO KINECTA to Kinecta Federal Credit Union | | 75.00 | |
| 815. BROKER APPRAISAL FEE to Kinecta Federal Credit Union | | 385.00 | |
| 816. ADMIN FEE TO KINECTA to Kinecta Federal Credit Union | | 162.00 | |
| 817. Processing Fee to Kinecta to Kinecta Federal Credit Union | | 500.00 | |
| 818. | | | |
| 819. | | | |
| 820. | | | |
| 821. | | | |
| 822. | | | |
| 823. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest from  02/26/07 To 02/28/07   @ $  117.93  /day | | 235.86 | |
| 902. Mortgage Insurance Premium | | | |
| 903. Hazard Insurance Premium | | | |
| 904. Flood Insurance Premium | to | | |
| 905. | | | |
| 906. | | | |
| 907. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | |
| 1001. Hazard Insurance | months @ $ | per month | |
| 1002. Mortgage Insurance | months @ $ | per month | |
| 1003. City property taxes | months @ $ | per month | |
| 1004. County property taxes | months @ $ | per month | |
| 1005. Annual assessments | months @ $ | per month | |
| 1006. Flood Insurance | months @ $ | per month | |
| 1007. Aggregate Account Adjustment. | months @ $ | per month | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or closing fee to   First Class Escrow | | 500.00 | |
| Detailed Escrow Fees | | 25.00 | |
| 1102. Abstract or closing fee | to | | |
| 1103. Title examination | to | | |
| 1104. Title Insurance binder | to | | |
| 1105. Document preparation | to | | |
| 1106. Notary fees | to | | |
| 1107. Attorney's fees | to | | |
| 1108. Title Insurance | to Landamerica Commonwealth | 650.00 | |
| 1109. Lender's coverage | $ | | |
| 1110. Owner's coverage | $ | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| 1114. | | | |
| 1115. Refer to Attachment | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording fees: Deed $        Mortgage $        Release $ | | 60.00 | |
| 1202. City/county tax/stamps:   Deed $        Mortgage $ | | | |
| 1203. State tax/stamps:   Deed $        Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| 1206. Title Company Overnight Fee | | 25.00 | |
| 1207. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey | to | | |
| 1302. Pest inspection | to | | |
| 1303. NOTARY SIGNING FEE to Complete Or Close | | 125.00 | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1311. | | | |
| 1312. | | | |
| 1313. | | | |
| 1314. | | | |
| 1315. | | | |
| 1316. | | | |
| 1317. | | | |
| 1318. | | | |
| 1319. | | | |
| 1320. | | | |

* REFER TO ATTACHED DETAIL STATEMENTS      Original

SETTLEMENT STATEMENT U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
ATTACHMENT

FILE NUMBER (ESCROW): 33710-MW   /MR                                PAGE: 1
BORROWER(S)                                          SETTLEMENT DATE: 02/27/07
Mohammad Alaei
Suzanne Alaei

LENDER: Kinecta Federal Credit Union
PROPERTY LOCATED AT: 28715 Stonegate Drive
                     Valley Center, CA  92082
------------------------------------------------------------------------------------

- PAGE 1 -
J. SUMMARY OF BORROWER'S TRANSACTION


104. LOAN TO BE PAID OFF          *              $       658,792.76
  First Federal                       646,371.28
  Interest @ 149.3383Per Diem
  From 02/21/07 To 02/28/07            1,045.37
  Recording Fee                            9.00
  Reconveyance Fee                        45.00
  Pre-Payment Fee                      8,266.67
  Interest to 02/21/07                 2,986.77
  Statement / Forwarding Fee              30.00
  Other Outstanding Fees                  38.67


201. DEPOSIT OR EARNEST MONEY                    $      3,706.25
  Deposit                             3,706.25

208. MISC. NEW LOAN CREDITS        *             $        292.00
  Broker credit Admin/$25 notary        187.00
  broker credit crd rpt/appr.           105.00


                                                 PAID FROM
            - PAGE 2 -                           BORROWER'S
                                                 FUNDS


DETAILED ESCROW FEES                    $            25.00 $
  Messenger Fees                                     25.00

1115. REFER TO ATTACHMENT               $         4,341.86 $
  2nd 1/2 taxes 06-07                             4,341.86


  Funds held for final audit

**First Class Escrow**
2745 E. Chapman Avenue
Orange, CA 92869
(714) 221-6000 Fax (714) 221-6035

Escrow No. 33710-MW
Reference: 28715 Stonegate Drive
Valley Center, CA  92082

Closing Date: February 27, 2007
Page 1 /MR

## Borrower
## CLOSING STATEMENT

BORROWER:
Mohammad Alaei
Suzanne Alaei
28715 Stonegate Drive
Valley Center, CA  92082

| | - - DEBITS - - | - - CREDITS - - |
|---|---|---|

**Deposits:**
Deposit
  By: Mohammad Alaei | | 3,706.25

**New Loan:**
New Encumbrance
  Kinecta Federal Credit Union | | 663,750.00

**Payoff(s):**
Loan to be Paid Off | 646,371.28
Re: First Federal
  Interest @ $149.33/day | 1,045.37
  From 02/21/07 To 02/28/07
Recording Fee | 9.00
Reconveyance Fee | 45.00
Pre-Payment Fee | 8,266.67
Interest to 02/21/07 | 2,986.77
Statement / Forwarding Fee | 30.00
Other Outstanding Fees | 38.67

**New Loan Charges:**
Re: Kinecta Federal Credit Union
  Interest @ $112.93/day | 338.79
  From 02/26/07 To 02/28/07
Appraisal Review to KINECTA | 75.00
FLOOD CERT TO KINECTA | 13.50
TAX SERVICE TO KINECTA | 75.00
BROKER APPRAISAL to CCG | 50.00
ADMIN FEE TO KINECTA | 162.00
Broker credit Admin/$25 notary | | 187.00
broker credit crd rpt/appr. | | 105.00
Processing Fee to Kinecta | 500.00
Re: Coast Capital Group
PROCESSING TO CCG | 695.00
ADMIN FEE TO CCG | 600.00
*Yield Spread to CCG POC $ 6,637.50
CREDIT REPORT TO CCG | 55.00

**Disbursements Paid:**
Notary/Signing Fee | 225.00
  pd to: Douglas J. Wicks

**Title Charges:**
Lenders Title Policy | 650.00
Record Grant Deed | 15.00
Record First Trust Deed | 45.00
Title Company Overnight Fee | 25.00
2nd 1/2 taxes 06-07 | 4,341.86

**Escrow Fees:**
Escrow Fees | 500.00
Messenger Fees | 25.00

(Continued on page 2)

**First Class Escrow**
2745 E. Chapman Avenue
Orange, CA 92869
(714) 221-6000 Fax (714) 221-6035

Escrow No. 33710-MW                                    Closing Date: February 27, 2007
Reference: 28715 Stonegate Drive                       Page 2 /MR
           Valley Center, CA  92082

## Borrower
## CLOSING STATEMENT

BORROWER:
Mohammad Alaei
Suzanne Alaei
28715 Stonegate Drive
Valley Center, CA  92082

| | - - DEBITS - - | - - CREDITS - - |
|---|---|---|
| Check Herewith | $          564.34 | |
| Totals | $       667,748.25 | $       667,748.25 |

### SAVE FOR INCOME TAX PURPOSES

First installment taxes are due November 1st, and delinquent December 10th.
Second installment taxes are due February 1st, and delinquent April 10th.
If you do not receive a tax bill from the tax collector, or the Seller, it is
your responsibility to contact the tax collector's office for a duplicate bill.

**EXHIBIT "B"**

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____

Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA | ☒ Conventional | ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| | ☐ FHA | ☐ USDA/Rural Housing Service | | | 100014299 |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☐ Fixed Rate | ☐ Other (explain): |
|---|---|---|---|---|---|
| $ 663,750.00 | 6.12500 % | 360 | | ☐ GPM | ☒ ARM (type): 7/1 ARM Jumbo Interest Only |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & zip) | No. of Units |
|---|---|
| 28715 Stonegate Drive, Valley Center, CA 92082 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| Parcel 1 Parcel Map No. 15773 File No 89-447245 | 1990 |

| Purpose of Loan | ☐ Purchase | ☐ Construction | ☐ Other (explain): | Property will be: |
|---|---|---|---|---|
| | ☒ Refinance | ☐ Construction-Permanent | | ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made  ☐ to be made |
|---|---|---|---|---|---|
| 2005 | $ 775000.00 | $ 643867.00 | Cash | | |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| Mohammad Alaei, an Unmarried Man and Suzanne Alaei, an Unmarried | | ☒ Fee Simple  ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) |
|---|
| |

## III. BORROWER INFORMATION / Co-Borrower

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| Mohammad Alaei | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | (760) 751-0331 | 11/27/1929 | 16 | | | | |

| ☐ Married  ☒ Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no. 0  ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|
| ☐ Separated | | ☐ Separated | |

| Present Address (street, city, state, ZIP) ☒ Own  ☐ Rent 1.58 No. Yrs. | Present Address (street, city, state, ZIP) ☐ Own  ☐ Rent ___ No. Yrs. |
|---|---|
| 28715 Stonegate Drive  Valley Center, CA 92082 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|
| 28715 Stonegate Drive  Valley Center, CA 92082 | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☒ Own  ☐ Rent 8.00 No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own  ☐ Rent ___ No. Yrs. |
|---|---|
| 8125 Fordham Road  Mobile, AL 36619 | |

## IV. EMPLOYMENT INFORMATION / Co-Borrower

| Name & Address of Employer ☒ Self Employed | Yrs. on this job | Name & Address of Employer ☐ Self Employed | Yrs. on this job |
|---|---|---|---|
| A H & S Enterprise  5212 Lott Road  Eight Mile, AL 36613 | 30.00  Yrs. employed in this line of work/profession 30 | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| Owner | (760) 751-0331 | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

100014299

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
VMP-21N (0507)
Page 1 of 4
VMP Mortgage Solutions, Inc. (800)521-7291
Initials: _____

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 25,000.00 | $ | $ 25,000.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | | 1,993.00 | $ 3,387.89 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | 225.00 | 225.00 |
| Net Rental Income | | | | Mortgage Insurance | 723.65 | 723.64 |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 25,000.00 | $ | $ 25,000.00 | Total | $ 2,941.65 | $ 4,336.53 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income   Notice:  Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| | | $ |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly  [x] Not Jointly

| ASSETS | Cash or Market Value | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Description | | | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| Cash deposit toward purchase held by: | $ | | Name and address of Company | $ Payment/Months | $ |
| | | | First Federal Bank | 1,993.00/324 | 643,867.00* |
| **List checking and savings accounts below** | | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| Washington Mutual | | | | | |
| | | | Acct. no. 49795346 | | |
| , | | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. 602514722 | $ 60,255.00 | | Capital One Bank | 564.00/34 | 18,818.00 |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| Washington Mutual | | | | | |
| | | | Acct. no. 517805729684 | | |
| , | | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. 602507462 | $ 67,895.00 | | Washington Mutual | 158.00/50 | 7,875.00 |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| Washington Mutual | | | | | |
| | | | Acct. no. 2577646947 | | |
| , | | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. 602598541 | $ 19,750.00 | | Wells Fargo Bank | 15.00/7 | 98.00 |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | | Acct. no. 446542016173 | | |
| Acct. no. | $ | | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | | | | |
| | | | Acct. no. | | |
| | | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | | |
| Face amount: $ | | | | | |
| **Subtotal Liquid Assets** | $ 147,900.00 | | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 885,000.00 | | Acct. no. | | |
| Vested interest in retirement fund | $ | | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | | |
| Automobiles owned (make and year) | $ | | | | |
| | | | Acct. no. | | |
| | | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | | Total Monthly Payments | $ 2,730.00 | |
| **Total Assets a.** | $ 1,032,900.00 | | Net Worth (a minus b) ► $ 362,242.00 | **Total Liabilities b.** | $ 670,658.00 |

100014299

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
VMP-21N (0507)

Page 2 of 4                                                                 Initials: _____

## VII. ASSETS AND LIABILITIES (cont'd)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 28715 Stonegate Drive Valley Center, CA 92082 | sngl | $ 885000 | $ 643867 | $ | $ 1993 | $ | $ |
| | | | | | | | |
| Totals | | $ 885000 | $ 643867 | $ | $ 1993 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| None | | |

## VIII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 643867.00 |
| e. Estimated prepaid items | 838.79 |
| f. Estimated closing costs | 9888.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 654593.79 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | 6637.50 |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 663750.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 663750.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -15793.71 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | x | | |
| b. Have you been declared bankrupt within the past 7 years? | | x | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | x | | |
| d. Are you a party to a lawsuit? | | x | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | x | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | x | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | x | | |
| h. Is any part of the down payment borrowed? | | x | | |
| i. Are you a co-maker or endorser on a note? | | x | | |
| j. Are you a U.S. citizen? | x | | | |
| k. Are you a permanent resident alien? | | x | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | x | | | |
| m. Have you had an ownership interest in a property in the last three years? | x | | | |
| (1) What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home -- solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | O | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information. | CO-BORROWER | ☐ I do not wish to furnish this information. |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White | Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White |
| Sex: | ☐ Female   ☒ Male | Sex: | ☐ Female   ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) BROKER | Name and Address of Interviewer's Employer Kinecta Federal Credit Union - Manhattan |
|---|---|---|
| ☐ Face-to-face interview | Interviewer's Signature             Date | 1440 Rosecrans Ave |
| ☒ Mail | | Manhattan Beach, CA 90266 |
| ☐ Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | | |

VMP-21N (0507)   Page 3 of 4   100014299   Freddie Mac Form 65 7/05 Fannie Mae Form 1003 7/05

## CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:  Mohammad Alaei | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number:  100014299 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | | X | |

100014299

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
VMP-21N (0507)                     Page 4 of 4

**EXHIBIT "C"**

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER / LENDER'S AGENT:

**Kinecta Federal Credit Union**
**1440 Rosecrans Ave**
**Manhattan Beach, CA  90266**

BORROWERS: **Mohammad Alaei**
**Suzanne Alaei**

☐ Preliminary ☒ Final
*DATE:* **February 20, 2007**
*LOAN NO.:* **100014299**
*Type of Loan:* **Adjustable**

ADDRESS: **28715 Stonegate Drive**
CITY/STATE/ZIP: **Valley Center, CA  92082**
PROPERTY: **28715 Stonegate Drive Valley Center, CA 92082**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| **7.141** % | $ **1,046,584.11** | $ **660,740.71** | $ **1,707,324.82** |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE<br>Monthly<br>BEGINNING | | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE<br>Monthly<br>BEGINNING |
|---|---|---|---|---|---|---|
| 60 | 3387.89 | 04/01/07 | | | | |
| 299 | 5013.49 | 04/01/12 | | | | |
| 1 | 5017.91 | 03/01/37 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**DEMAND FEATURE:** ☒ This loan does not have a Demand Feature. ☐ This loan has a Demand Feature as follows:

**VARIABLE RATE FEATURE:**
☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: **28715 Stonegate Drive, Valley Center, CA 92082**

**ASSUMPTION:** Someone buying this property ☐ cannot assume the remaining balance due under original mortgage terms.
☒ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

**FILING / RECORDING FEES:** $ **100.00**

**PROPERTY INSURANCE:** ☒ Property hazard insurance in the amount of $ **663,750.00** with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance ☐ is ☒ is not available through the lender at an estimated cost of _____ for a _____ year term.

**LATE CHARGES:** If your payment is more than **15** days late, a late charge of **5.0** % of the **Prin and Int** will be assessed. **First Mortgage Late Fee - 5% of Principal & Intere**

**PREPAYMENT:** If you pay off your loan early, you
☐ may ☒ will not have to pay a penalty.
☐ may ☒ will not be entitled to a refund of part of the finance charge.

**See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.**
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____     _____
**Mohammad Alaei**           BORROWER/DATE     **Suzanne Alaei**           BORROWER/DATE

_____     _____
BORROWER/DATE     BORROWER/DATE

**100014299**

## DEFINITION OF TRUTH-IN-LENDING TERMS

### ANNUAL PERCENTAGE RATE

This is not the Note rate for which the borrower applied. The Annual Percentage Rate (APR) is the cost of the loan in percentage terms taking into account various loan charges of which interest is only one such charge. Other charges which are used in calculation of the Annual Percentage Rate are Private Mortgage Insurance or FHA Mortgage Insurance Premium (when applicable) and Prepaid Finance Charges (loan discount, origination fees, prepaid interest and other credit costs). The APR is calculated by spreading these charges over the life of the loan which results in a rate generally higher than the interest rate shown on your Mortgage/Deed of Trust Note. If interest was the only Finance Charge, then the interest rate and the Annual Percentage Rate would be the same.

### PREPAID FINANCE CHARGES

Prepaid Finance Charges are certain charges made in connection with the loan and which must be paid upon the close of the loan. These charges are defined by the Federal Reserve Board in Regulation Z and the charges must be paid by the borrower. Non-Inclusive examples of such charges are: Loan origination fee, "Points" or Discount, Private Mortgage Insurance or FHA Mortgage Insurance, Tax Service Fee. Some loan charges are specifically excluded from the Prepaid Finance Charge such as appraisal fees and credit report fees.

Prepaid Finance Charges are totaled and then subtracted from the Loan Amount (the face amount of the Deed of Trust/Mortgage Note). The net figure is the Amount Financed as explained below.

### FINANCE CHARGE

The amount of interest, prepaid finance charge and certain insurance premiums (if any) which the borrower will be expected to pay over the life of the loan.

### AMOUNT FINANCED

The Amount Financed is the loan amount applied for less the prepaid finance charges. Prepaid finance charges can be found on the Good Faith Estimate/Settlement Statement (HUD-1 or 1A). For example if the borrower's note is for $100,000 and the Prepaid Finance Charges total $5,000, the Amount Financed would be $95,000. The Amount Financed is the figure on which the Annual Percentage Rate is based.

### TOTAL OF PAYMENTS

This figure represents the total of all payments made toward principal, interest and mortgage insurance (if applicable).

### PAYMENT SCHEDULE

The dollar figures in the Payment Schedule represent principal, interest, plus Private Mortgage Insurance (if applicable). These figures will not reflect taxes and insurance escrows or any temporary buydown payments contributed by the seller.

100014299

Initials: _____

**EXHIBIT "D"**

# GOOD FAITH ESTIMATE OF SETTLEMENT COSTS

100014299

Lender: Kin Sea Federal Credit Union

Address: 1   Rosecrans Ave Manhattan Beach, CA 9026

Applicants: **Mohammad Alaei**

Property Address: **28715 Stonegate Drive Valley Center, CA 92082**

☐ FHA   ☐ VA   ☒ Conv.   Est. Rate: __6.12500__   Loan Amount: __$663,750.00__   Date: __02/20/07__

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.
The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

## ESTIMATED SETTLEMENT CHARGES

| | | Borrower | Seller/Lender |
|---|---|---|---|
| 801. | _____ % Origination Fee | | |
| 802. | _____ % Discount | | |
| 803. | Appraisal Fee | | |
| 804. | Credit Report | | |
| 805. | Lender's Inspection Fee | | |
| 806. | Mortgage Insurance Application Fee | | |
| 807. | Assumption Fee | | |
| 808. | **Internet Review Fee** | | |
| 809. | **Up Front Fee** | | |
| 810. | **Tax Related Service Fee** | 75.00 ✓ | |
| 811. | **Additional Costs from** | | |
| | **Attached Addendum** | 2,150.50 ✓ | |
| | **Additional (POC) items from** | | 6,637.50 POC |
| | **Attached Addendum** | | |
| 901. | Interest for _3_ days @ $_112.93_ per day | 338.79 ✓ | |
| 902. | Mortgage Insurance Premium (PMI/MIP) or VA FF | | |
| 903. | Hazard Insurance Premium for 1 year | | |
| 904. | Flood Insurance Premium | | |
| 905. | | | |
| 1001. | Hazard Insurance _____ @$ __225.00__ | | |
| | Mortgage Insur. _____ @$ | | |
| | City Tax _____ @$ | | |
| | County Tax _____ @$ __723.64__ | | |
| | Assmt Res _____ @$ | | |
| | Flood Insurance _____ @$ | | |
| 1007. | _____ @$ | | |
| 1101. | Settlement or Closing Fees | 500.00 ✓ | |
| 1102. | Abstract or Title Search | | |
| 1103. | Title Examination | | |
| 1104. | Title Insurance Binder | | |
| 1105. | Document Preparation | | |
| 1106. | Notary Fees | 200.00 ✓ | |
| 1107. | Attorneys' Fees | | |
| 1108. | Title Insurance | 650.00 ✓ | |
| 1109. | Lender's Coverage | | |
| 1110. | Owner's Coverage | | |
| 1111. | | | |
| 1112. | **Title Courier Fee** | 25.00 ✓ | |
| 1113. | **Title Wire Fee** | 25.00 ✓ | |
| 1201. | Recording Fees | 100.00 ✓ | |
| 1202. | City/County Tax/Stamps | | |
| 1203. | State Tax/Stamps | | |
| 1204. | | | |
| 1205. | **Record Grant Deed** | 25.00 ✓ | |
| 1301. | Survey | | |
| 1302. | Pest Inspection | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| | **TOTAL ESTIMATED CHARGES** | **$4,089.29** | **$6,637.50** |

☒  Use of a particular provider of service is required and the estimate is based on charges of the provider. Please see attached Addendum.

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs," and the Consumer Handbook on ARM Mortgages, if applicable.

| | | | |
|---|---|---|---|
| Applicant **Mohammad Alaei** | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

☐  This Good Faith Estimate is being provided by
no lender has yet been obtained.

_____, a mortgage broker, and

VMP MORTGAGE FORMS - (800)521-7291

**"PBL" indicates the cost is Paid By Lender**
**"PPC" indicates a portion of the cost is Paid Outside of Closing**

***See addendum for complete Breakout of Closing Costs***

# Good Faith Estimate of Settlement Costs Addendum

Loan Number: 100014299

Lender: Kinecta Federal Credit Union

Address: 1440 Rosecrans Ave Manhattan Beach, CA 90266

Applicants: Mohammad Alaei

Property Address: 28715 Stonegate Drive Valley Center, CA 92082

☐ FHA  ☐ VA  ☒ Conv.   Est. Rate: 6.12500      Loan Amount: $663,750.00      Date: 02/20/07

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.
The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

## 800. Items Payable in Connection with Loan

| | | | Borrower | Seller/Lender |
|---|---|---|---|---|
| 811. | Flood Cert | to National Flood Research | 13.50 ✓ | |
| 812. | Broker Appraisal Fee | to Kinecta Federal Credit Union | 50.00 ✓ | |
| 813. | Mortgage Processing Fee | to | 500.00 ✓ | |
| 814. | | to | | |
| 815. | Admin Fee Broker Loans ONLY | to | 162.00 ✓ | |
| 816. | Broker Rebate | to 432 COAST CAPITAL GROUP | | 6,637.50 PBL ✓ |
| 817. | Appraisal Review | to | 75.00 ✓ | |
| 818. | | to | | |
| 819. | | to | | |
| 820. | | to | | |
| 821. | Broker Processing Fee | to | 695.00 ✓ | |
| 822. | | to | | |
| 823. | Broker Admin Fee | to | 600.00 ✓ | |
| 824. | | to | | |
| 825. | Broker Credit Report | to | 55.00 ✓ | |
| 826. | | to | | |
| | **Total Additional Items (800 Series)** | | 2,150.50 | |

## 1000. Additional Reserves Deposited with Lender

| | | | |
|---|---|---|---|
| 1007. | months @ $ | mo. | |
| 1008. | months @ $ | mo. | |
| 1009. | months @ $ | mo. | |
| 1010. | months @ $ | mo. | |
| 1011. | months @ $ | mo. | |
| 1012. | months @ $ | mo. | |
| | **Total Additional Items (1000 Series)** | | |

## 1300. Additional Settlement Charges

| | | |
|---|---|---|
| 1307. | to | |
| 1308. | to | |
| 1309. | to | |
| 1310. | to | |
| 1311. | to | |
| 1312. | to | |
| | **Total Additional Items (1300 Series)** | |
| | **Total POC Items** | 6,637.50 |

"PBL" means the cost is Paid By Lender

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs," and the Consumer Handbook on ARM Mortgages, if applicable.

Applicant  Mohammad Alaei                    Date                    Applicant                                          Date

Applicant                                     Date                    Applicant                                          Date

*See addendum for complete Breakout of Closing Costs*

# Good Faith Estimate of Settlement Costs Addendum
## Breakdown of Closing Costs

Loan Number:  100014299

Date:  02/20/07

| Line # | Total Amount | Borrower Amount / Pmt Code | | Seller Amount / Pmt Code | | Lender Amount | Partial POC Amount / Payor Code |
|--------|-------------:|---------------:|---|-----:|---|--------------:|------------:|
| 810 | 75.00 | 75.00 | Due | .00 | Due | .00 | .00 |
| 811 | 13.50 | 13.50 | Due | .00 | Due | .00 | .00 |
| 812 | 50.00 | 50.00 | Due | .00 | Due | .00 | .00 |
| 813 | 500.00 | 500.00 | Due | .00 | Due | .00 | .00 |
| 815 | 162.00 | 162.00 | Due | .00 | Due | .00 | .00 |
| 816 | 6,637.50 | .00 | Due | .00 | Due | 6,637.50 | .00 |
| 817 | 75.00 | 75.00 | Due | .00 | Due | .00 | .00 |
| 821 | 695.00 | 695.00 | Due | .00 | Due | .00 | .00 |
| 823 | 600.00 | 600.00 | Due | .00 | Due | .00 | .00 |
| 825 | 55.00 | 55.00 | Due | .00 | Due | .00 | .00 |
| 901 | 338.79 | 338.79 | Due | .00 | Due | .00 | .00 |
| 1101 | 500.00 | 500.00 | Due | .00 | Due | .00 | .00 |
| 1106 | 200.00 | 200.00 | Due | .00 | Due | .00 | .00 |
| 1108 | 650.00 | 650.00 | Due | .00 | Due | .00 | .00 |
| 1112 | 25.00 | 25.00 | Due | .00 | Due | .00 | .00 |
| 1113 | 25.00 | 25.00 | Due | .00 | Due | .00 | .00 |
| 1201-Deed | 100.00 | 100.00 | Due | .00 | Due | .00 | .00 |
| 1205 | 25.00 | 25.00 | Due | .00 | Due | .00 | .00 |

Legend:  Pmt Codes:   Due = Due at Closing, POC = Paid Outside of Closing, CR = Credit, POA = Paid Out of Application Fee.  Lender Amt is considered POC.

| TOTALS: | | Total Amount | Borrower Amount | Seller Amount | Lender Amount | Other Payor Amount |
|---------|---|-------------:|----------------:|--------------:|--------------:|-------------------:|
| DUE | | 4,089.29 | 4,089.29 | .00 | | |
| CR | ( - ) | .00 | .00 | .00 | | |
| POC | ( + ) | 6,637.50 | .00 | .00 | 6,637.50 | .00 |
| POA | ( + ) | .00 | .00 | | | |
| TOTAL | | 10,728.79 | 4,089.29 | .00 | 6,637.50 | .00 |

**EXHIBIT "E"**

LOAN NO.: 10000 4289
ESCROW NO.: 33710-MW
ORDER NO.: 06744587-02
LOAN NAME: Alaei, Mohammad

DOCUMENT DATE: 2/20/07
FUNDING DATE:                    To Follow

First Class Escrow
2745 E. Chapman Avenue
Orange, CA 92869

KINECTA FEDERAL CREDIT UNION
1440 ROSECRANS AVENUE
MANHATTAN BEACH, CA 90266

ATTN: Misty Wortz

ATTN: Josh Ruple
(310)643-1800 x:6840

| MONTHLY PAYMENT: | | P & I + IMPOUNDS | |
|---|---|---|---|
| P & I | 3,387.89 | P & I | 3,387.89 |
| | | TAX | 723.64 |
| | | INS | 225.00 |
| | | PMI | .00 |
| TOTAL | 3,387.89 | TOTAL | 4,336.53 |

We enclose the following documents necessary to complete the above-captioned loan. Return all documents completed as shown at the time funds are requested. Deliver one copy of Note, Deed of Trust and Disclosure to Borrower(s).

( X ) Note: Conform and Certify copies.
( X ) Deed of Trust: Conform and certify copies.
( ) Condominium/PUD Rider
( ) Disclosure Statement          ( X ) Rescission Notice
( ) Affidavit: Purchaser and Vendor
( x ) Insurance Requirements
( X ) Borrower(s) Instructions     ( ) Proxy Card
( ) FHA 2900 or VA 1876/1820-Borrower(s) to execute and return all copies. Do not date.
( ) Addendum to Instructions: Escrow Officer to acknowledge
( X ) RESPA Settlement Statement - Complete and return after recordation.

( ) Amendment to Note and/or Deed of Trust

( X ) Impound Authorization
( X ) Occupancy Statement
( ) Premium Payment Authorization
( X ) Flood Certification

ALL DOCUMENTS MUST BE IN OUR OFFICE PRIOR TO DISBURSEMENT OF LOAN FUNDS

IN ADDITION TO THE ABOVE, FURNISH US THE FOLLOWING WHEN REQUESTING FUNDS:
( ) Termite Report and Clearance: In duplicate. Required FHA/VA statement must be typed on the report/clearance and signed by Borrower(s).
( ) Certified copy of your original Escrow Instructions, Pre-Closing Statements and/or Amendments.
( X ) See Letter of Approval with additional Conditions
( ) If this BOX is checked we have already collected your Appraisal, Automated Underwriting
( ) Fee, and Credit Report Fee
PRIOR TO FUNDING WE WILL OBTAIN:          THIS LOAN MUST RECORD PRIOR TO:
( ) PUD Name:

ALTA POLICY must contain Endorsements 100, 116, 8.1 & 111.5, 103.1          with liability in the amount of our loan on property described herein. LIABILITY SUBJECT ONLY TO: (Gen. & Spec. taxes) Fiscal Year Pay 2nd Half 2006/07 Taxes
   Funds may be used for account of the Vestees, and you will record all instruments when you comply with the following:
   1. Issue said form of Policy showing title vested as shown below.
   2. Issue said form of Policy free from encumbrances except items A, C - 14          of preliminary Title Report
      dated 1/25/07          . Secondary financing in the amount of $          has been approved.

Vesting: Mohammad Alaei, an Unmarried Man and Suzanne Alaei, an Unmarried Woman as Joint Tenants

Case No.:          County: San Diego

Address: 28715 Stonegate Drive
         Valley Center ,CA 92082

First Payment Date: 4/1/07          Int. Rate: 6.12500

Last Payment Date: 3/1/37          Term 360          mos.

THE TOTAL CONSIDERATION IN THIS TRANSACTION EXCEPT FOR OUR LOAN AND APPROVED SECONDARY FINANCING IF ANY, MUST PASS IN THE FORM OF CASH, THROUGH YOUR ESCROW. DO NOT RECORD OUR DEED OF TRUST IF YOU HAVE KNOWLEDGE OF A CONCURRENT OR SUBSEQUENT ESCROW TO BE OPENED OR CLOSED UPON COMPLETION OF THIS ESCROW, WHICH WILL TRANSFER SUBJECT PROPERTY.

| SALES PRICE |
|---|
| N/A |

| LOAN AMOUNT |
|---|
| 663,750.00 |

LOAN REP. BROKER

BRANCH          (800) 854-4501

| | HUD LINE ITEM | If POC ✔ | $ | |
|---|---|---|---|---|
| KINECTA LOAN FEE | 801 | ☐ | $ | |
| CREDIT REPORT | 804 | ☐ | $ | .00 |
| APPRAISAL | 803 | ☐ | $ | .00 |
| APPLICATION FEE | 809 | ☑ | $ | .00 |
| INTERNET REVIEW FEE | 808 | ☐ | $ | .00 |
| TAX SERVICE CONTRACT | 810 | ☐ | $ | 75.00 |
| Broker Appraisal Fee | 812 | ☐ | $ | 50.00 |
| TITLE INSURANCE FEE | 1108 | ☐ | $ | 650.00 |
| UNDERWRITING FEE | 1305 | ☐ | $ | .00 |
| ADMINISTRATIVE FEE | 815 | ☐ | $ | 162.00 |
| Broker Rebate POC paid by Lender | 816 | ☐ | $ | 6,637.50 |
| MORTGAGE PROCESSING FEE | 813 | ☐ | $ | 500.00 |
| | 814 | ☐ | $ | |

% DISCOUNT

112.93          PER DIEM INTEREST
FROM 2/26/07 TO 3/1/07

0   MOS TAX @ 723.64   =   .00
0   MOS INS @ 225.00   =   .00
    MOS MMI/PMI @ .00   =   .00

| | HUD LINE ITEM | ✔ if POC | $ | |
|---|---|---|---|---|
| 442 APPRAISAL REVIEW FEE | 817 | ☐ | $ | 75.00 |
| FLOOD CERT | 811 | ☐ | $ | 13.50 |
| TITLE SUB ESCROW FEE | 1111 | ☐ | $ | .00 |
| RECORDING FEE | 1205 | ☐ | $ | 100.00 |
| SUBORDINATION FEE | 1305 | ☐ | $ | .00 |
| HOA-Home Owner Association Fee | 1303 | ☐ | $ | .00 |
| COURIER FEE (FED EX) | 1304 | ☐ | $ | .00 |
| WIRE FEE | 1309 | ☐ | $ | .00 |
| RECONVEYANCE FEE | 819 | ☐ | $ | .00 |
| | 826 | ☐ | $ | .00 |
| LOAN SIGNING FEE | 1307 | ☐ | $ | .00 |
| DEMAND FEE | 820 | ☐ | $ | .00 |

| | | | |
|---|---|---|---|
| | | PRIVATE MTG. INS. PREM | |
| | | To Follow | |

IF YOU HAVE QUESTIONS ON THE ABOVE CHARGES PLEASE NOTIFY THIS OFFICE PRIOR TO FUNDING

*Application Fee is refunded at the time of funding. If the member cancels the loan it will not be refunded.*

Specific Closing Instructions
2520.UFF& 2520A.CDD

See Attached Fee List For Other Fees (See Page 2)
ESCROW INSTRUCTIONS          Page 1 of 2

# Specific Closing Instructions

HUD LINE
ITEM

| Item | Line | | Amount |
|---|---|---|---|
| Broker Processing Fee | | $ | 695.00 |
| | | $ | .00 |
| Broker Admin Fee | | $ | 600.00 |
| | | $ | .00 |
| Broker Credit Report | | $ | 55.00 |
| | 1308 | $ | .00 |
| | 1310 | $ | .00 |
| | 1204 | $ | .00 |
| Record Grant Deed | 1205 | $ | 25.00 |
| | 1306 | $ | .00 |
| | 1311 | $ | .00 |

## CONDITIONS TO BE SATISFIED PRIOR TO DISBURSEMENT OF LOAN PROCEEDS:

| Condition Description | Cls Cnd? | Cond Type |
|---|---|---|
| 1. Hazard Insurance to include Kinecta FCU as 1st Mortgagee | Yes | PTF |
| 2. Signed certified escrow instructions & all amendments, lender rate & term. | Yes | PTF |
| 3. Co-Owner to Sign Deed of Trust, Rider, TIL, Errors & Omissions and Right to Cancel | Yes | PTF |
| 4. Mohammad to initial application where indicated changing married to unmarried (per escrow | Yes | PTF |
| 5. Deed changing Title vesting | Yes | PTF |

## Legal Description:

Legal Description attached hereto and made a part hereof as Exhibit "A"     APN: 185-390-16-00

**HUD-1 SETTLEMENT STATEMENT:**
The final HUD-1 Settlement Statement must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto.  If any changes to fees occur documents may need to be re-drawn and re-signed.  Fax a certified copy of the final HUD-1 Settlement Statemnt to KINECTA FEDERAL CREDIT UNION.

Attention: Quality Assurance: Send the original final HUD-1 Settlement Statement to us at the following address within 24 hours of settlement:
**1440 ROSECRANS AVE., MANHATTAN BEACH, CALIFORNIA  90266**

**ADDITIONAL INFORMATION:**     BORROWER MUST SIGN AND DATE THESE CLOSING INSTRUCTIONS.
If for any reason this loan does not close within 48 hours of your receipt of funds, immediately return all documents to Lender and wire all funds only to:
**KINECTA FEDERAL CREDIT UNION**
**1440 ROSECRANS AVE., MANHATTAN BEACH, CALIFORNIA  90266**

If  you have any questions regarding any of these Instructions, please contact     **KINECTA FEDERAL CREDIT UNION**
at      **(800) 854-9846**
**BORROWER ACKNOWLEDGMENT:**     I/we have read and acknowledged receipt of these Closing Instructions.

Mohammad  Alaei _____  Date

_____  Date

_____  Date

_____  Date

_____  Date

_____  Date

**ACKNOWLEDGED AND AGREED:**     Settlement Agent   Misty Wortz _____  Date

SPECIFIC CLOSING INSTRUCTIONS 2 of 2
SCHFEES.UFF

**EXHIBIT "F"**

# FIXED/ADJUSTABLE RATE RIDER
### (One-Year Treasury Index - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **20th** day of **February, 2007** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to **Kinecta Federal Credit Union A FEDERAL CREDIT UNION**

("Lender") of the same date and covering the property described in the Security Instrument and located at:
**28715 Stonegate Drive, Valley Center, CA  92082**

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of **6.12500** %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **March, 2012** , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - ONE-YEAR TREASURY INDEX- Single Family -
Fannie Mae Uniform Instrument**

Ⓥ**MP**®**-843R** (0006).01    **Form 3182 1/01**
Page 1 of 4                   Initials:_____
VMP MORTGAGE FORMS - (800)521-7291

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and 750/1000** percentage points (2.75000        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.12500        % or less than 4.12500        %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.12500.        %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Initials: _____

VMP-843R (0006).01                     Page 2 of 4                     Form 3182 1/01

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all

Initials:_____

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
Mohammad   Alaei                          -Borrower         Suzanne   Alaei                            -Borrower

_____ (Seal)        _____ (Seal)
                                                 -Borrower                                                          -Borrower

_____ (Seal)        _____ (Seal)
                                                 -Borrower                                                          -Borrower

_____ (Seal)        _____ (Seal)
                                                 -Borrower                                                          -Borrower

VMP®-843R (0006).01                          Page 4 of 4                          Form 3182 1/01

**EXHIBIT "G"**

100014299

# InterestFirst<sup>SM</sup> ADJUSTABLE RATE NOTE
## (One-Year Treasury Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| February 20th, 2007 | MANHATTAN BEACH | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

28715 Stonegate Drive, Valley Center, CA  92082

[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $      $ 663,750.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is      KINECTA FEDERAL CREDIT UNION
A FEDERAL CREDIT UNION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.12500                %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment on the first day of every month, beginning on      April, 2007                . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note.  Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on      March 1st, 2037        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at      1440 ROSECRANS AVENUE
MANHATTAN BEACH,   CALIFORNIA 90266
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

My monthly payment will be in the amount of U.S. $3,387.89                before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

**MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - ONE-YEAR TREASURY INDEX - Single Family - Fannie Mae Uniform Instrument**

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **March, 2012** , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding      **Two and 750/1000** percentage points ( **2.75000**               %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.12500**               % or less than **4.12500**               %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **11.12500**            %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G)  Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00**% of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Form 3531 11/01

Initials: _____

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Mohammad  Alaei                              -Borrower

_____ (Seal)
                                                          -Borrower


_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower


_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower


_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

*[Sign Original Only]*

℘JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| MOHAMMAD A. ALAEI | KINECTA FEDERAL CREDIT UNION, fka HUGHES AIRCRAFT EFCU, et al.   09 AUG 13  AM 8:38 |
| **(b)**   County of Residence of First Listed Plaintiff   San Diego    (EXCEPT IN U.S. PLAINTIFF CASES) | CLERK, U.S. DISTRICT COURT  County of Residence of First Listed Defendant SN DISTRICT OF CALIFORNIA    (IN U.S. PLAINTIFF CASES ONLY)   NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.   BY          DEPUTY |
| **(c)**   Attorney's (Firm Name, Address, and Telephone Number)  Christopher A. Villasenor, Catalyst Law Group, APC, 9710 Scranton Road, San Diego, CA  92121 (858) 450-0099 | Attorneys (If Known)  '09 CV 1762 DMS BLM |

| II. BASIS OF JURISDICTION   (Place an "X" in One Box Only) | | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff  (For Diversity Cases Only)                             and One Box for Defendant) | | | | | |
|---|---|---|---|---|---|---|---|
| | | | PTF | DEF | | PTF | DEF |
| ❏ 1   U.S. Government  Plaintiff | ☒ 3   Federal Question  (U.S. Government Not a Party) | Citizen of This State | ❏ 1 | ❏ 1 | Incorporated or Principal Place  of Business In This State | ❏ 4 | ❏ 4 |
| ❏ 2   U.S. Government  Defendant | ❏ 4   Diversity   (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place  of Business In Another State | ❏ 5 | ❏ 5 |
| | | Citizen or Subject of a  Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

### IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance  ❏ 120 Marine  ❏ 130 Miller Act  ❏ 140 Negotiable Instrument  ❏ 150 Recovery of Overpayment  & Enforcement of Judgment  ❏ 151 Medicare Act  ❏ 152 Recovery of Defaulted  Student Loans  (Excl. Veterans)  ❏ 153 Recovery of Overpayment  of Veteran's Benefits  ❏ 160 Stockholders' Suits  ❏ 190 Other Contract  ❏ 195 Contract Product Liability  ❏ 196 Franchise | **PERSONAL INJURY**  ❏ 310 Airplane  ❏ 315 Airplane Product  Liability  ❏ 320 Assault, Libel &  Slander  ❏ 330 Federal Employers'  Liability  ❏ 340 Marine  ❏ 345 Marine Product  Liability  ❏ 350 Motor Vehicle  ❏ 355 Motor Vehicle  Product Liability  ❏ 360 Other Personal  Injury | **PERSONAL INJURY**  ❏ 362 Personal Injury -  Med. Malpractice  ❏ 365 Personal Injury -  Product Liability  ❏ 368 Asbestos Personal  Injury Product  Liability  **PERSONAL PROPERTY**  ❏ 370 Other Fraud  ☒ 371 Truth in Lending  ❏ 380 Other Personal  Property Damage  ❏ 385 Property Damage  Product Liability | ❏ 610 Agriculture  ❏ 620 Other Food & Drug  ❏ 625 Drug Related Seizure  of Property 21 USC 881  ❏ 630 Liquor Laws  ❏ 640 R.R. & Truck  ❏ 650 Airline Regs.  ❏ 660 Occupational  Safety/Health  ❏ 690 Other | ❏ 422 Appeal 28 USC 158  ❏ 423 Withdrawal  28 USC 157  **PROPERTY RIGHTS**  ❏ 820 Copyrights  ❏ 830 Patent  ❏ 840 Trademark | ❏ 400 State Reapportionment  ❏ 410 Antitrust  ❏ 430 Banks and Banking  ❏ 450 Commerce  ❏ 460 Deportation  ❏ 470 Racketeer Influenced and  Corrupt Organizations  ❏ 480 Consumer Credit  ❏ 490 Cable/Sat TV  ❏ 810 Selective Service  ❏ 850 Securities/Commodities/  Exchange  ❏ 875 Customer Challenge  12 USC 3410  ❏ 890 Other Statutory Actions  ❏ 891 Agricultural Acts |
| **REAL PROPERTY**  ❏ 210 Land Condemnation  ❏ 220 Foreclosure  ❏ 230 Rent Lease & Ejectment  ❏ 240 Torts to Land  ❏ 245 Tort Product Liability  ❏ 290 All Other Real Property | **CIVIL RIGHTS**  ❏ 441 Voting  ❏ 442 Employment  ❏ 443 Housing/  Accommodations  ❏ 444 Welfare  ❏ 445 Amer. w/Disabilities -  Employment  ❏ 446 Amer. w/Disabilities -  Other  ❏ 440 Other Civil Rights | **PRISONER PETITIONS**  ❏ 510 Motions to Vacate  Sentence  **Habeas Corpus:**  ❏ 530 General  ❏ 535 Death Penalty  ❏ 540 Mandamus & Other  ❏ 550 Civil Rights  ❏ 555 Prison Condition | **LABOR**  ❏ 710 Fair Labor Standards  Act  ❏ 720 Labor/Mgmt. Relations  ❏ 730 Labor/Mgmt.Reporting  & Disclosure Act  ❏ 740 Railway Labor Act  ❏ 790 Other Labor Litigation  ❏ 791 Empl. Ret. Inc.  Security Act  **IMMIGRATION**  ❏ 462 Naturalization Application  ❏ 463 Habeas Corpus -  Alien Detainee  ❏ 465 Other Immigration  Actions | **SOCIAL SECURITY**  ❏ 861 HIA (1395ff)  ❏ 862 Black Lung (923)  ❏ 863 DIWC/DIWW (405(g))  ❏ 864 SSID Title XVI  ❏ 865 RSI (405(g))  **FEDERAL TAX SUITS**  ❏ 870 Taxes (U.S. Plaintiff  or Defendant)  ❏ 871 IRS—Third Party  26 USC 7609 | ❏ 892 Economic Stabilization Act  ❏ 893 Environmental Matters  ❏ 894 Energy Allocation Act  ❏ 895 Freedom of Information  Act  ❏ 900Appeal of Fee Determination  Under Equal Access  to Justice  ❏ 950 Constitutionality of  State Statutes |

| V.  ORIGIN   (Place an "X" in One Box Only) | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1   Original  Proceeding | ❏ 2  Removed from  State Court | ❏ 3   Remanded from  Appellate Court | ❏ 4  Reinstated or  Reopened | ❏ 5  Transferred from  another district  (specify) | ❏ 6  Multidistrict  Litigation | ❏ 7  Appeal to District  Judge from  Magistrate  Judgment |

| VI.  CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):  15 usc section 1601   Brief description of cause:  Truth in Lending Act |
|---|---|

| VII.  REQUESTED IN  COMPLAINT: | ❏ CHECK IF THIS IS A CLASS ACTION  UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint:  JURY DEMAND:  ☒ Yes   ❏ No |
|---|---|---|---|

| VIII. RELATED CASE(S)  IF ANY | (See instructions): | JUDGE | DOCKET NUMBER |
|---|---|---|---|

| DATE  08/12/2009 | SIGNATURE OF ATTORNEY OF RECORD  Christopher A. Villasenor X   *Chris Villasenor* |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT #  4183   AMOUNT  $350.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

MS 8/13/09

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS004183
Cashier ID: msweaney
Transaction Date: 08/13/2009
Payer Name: CATALYST LAW GROUP
-----------------------------------
CIVIL FILING FEE
 For: ALAEI V KINECTA FEDERAL CU
 Case/Party: D-CAS-3-09-CV-001762-001
 Amount:        $350.00
-----------------------------------
CHECK
 Check/Money Order Num: 023516
 Amt Tendered:  $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```